ARNOLDO CASILLAS, ESQ., SBN 158519
DENISSE O. GASTÉLUM, ESQ., SBN 282771
**CASILLAS & ASSOCIATES**
3777 Long Beach Blvd., Third Floor
Long Beach, CA 90807
Telephone: (562) 203-3030
Facsimile: (323) 725-0350
Email: acasillas@casillaslegal.com
        dgastelum@casillaslegal.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ESTATE OF PAUL REA, by and through successor in interest, Leah Garcia; LEAH GARCIA, individually; JAYLENE REA, individually; TOMMY SANCHEZ, individually;<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; ALEX VILLANUEVA; HECTOR SAAVEDRA-SOTO; ARGELIA HUERTA; DOE SANCHEZ (Badge Number No. 9898); and DOES 1 to 10, Defendants.<br>_____ | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search & Seizure (42 U.S.C. § 1983)<br>2. Municipal Liability for Unconstitutional Customs and Practices (42 U.S.C. § 1983)<br>3. Supervisory Liability for Ratification and Failure to Train, Supervise, and Discipline (42 U.S.C. § 1983)<br>4. Interference with Familial Integrity (42 U.S.C. § 1983)<br>5. Substantive Due Process Violation (42 U.S.C. § 1983)<br>6. Negligent Hiring, Training, Supervision, and Retention<br>7. Assault & Battery<br>8. Wrongful Death<br>9. Survivorship<br>10. False Imprisonment<br>11. Civil Rights Violations (Cal. Civ. Code § 52.1)<br><br>**DEMAND FOR JURY TRIAL** |

1

## COMPLAINT FOR DAMAGES

COME NOW Plaintiff ESTATE OF PAUL REA, by and through successor in interest, Leah Garcia, and Plaintiffs LEAH GARCIA, individually, JAYLENE GARCIA, individually, and TOMMY SANCHEZ, individually, and allege as follows:

## I.

## INTRODUCTION

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the shooting and killing of Paul Rea by Deputy Hector Saavedra-Soto of the Los Angeles County Sheriff's Department.  By way of this action, Plaintiffs will establish the violations of fundamental rights under the United States Constitution in connection with the killing of Paul Rea on or about June 27, 2019.

2.      At the time of his death, Paul Rea was just 18 years old.  He was a small slender young man who was known in his community for his love of family and friends. His death has been a profound and unimaginable loss to his family and friends, the present Plaintiffs.

3.      Without justification or cause, Defendant Deputy Hector Saavedra-Soto shot and killed Paul Rea when he shot him multiple times as Paul Rea attempted to run away from him.  This coldblooded shooting was absolutely unjustified and it is Plaintiffs' goal to show that the cowardly killing of Paul was a senseless and unwarranted act of police abuse.

4.      This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution in connection with the unlawful search and seizure of Tommy Sanchez and his property; the battery of Tommy Sanchez; the false arrest and imprisonment of Tommy Sanchez; the violation of Tommy Sanchez's right pursuant to the California Bane Act; and the deputies'

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  intentional infliction of emotional distress upon Tommy Sanchez, all of which

2  occurred on or about on or about June 27, 2019.

3      5.    Following the shooting and killing of Paul Rea, his sister Jaylene Rea

4  has been the subject of a campaign of harassment by the shooter Deputy Hector

5  Saavedra-Soto and his partner Deputy ARGELIA HUERTA and their fellow

6  Banditos sheriff's deputies.  From the time of the killing of Paul Rea, June 27, 2019,

7  to the present, these sheriff's deputies, following orders from the Banditos gang

8  leaders, have subjected Jaylene Rea to threats in attempt to intimidate her from

9  asserting her constitutional rights against unreasonable searches and seizures and her

10  right to remain silent.  This civil rights action will also seek to establish the violations

11  of fundamental rights under the United States Constitution in connection with the

12  unlawful search and seizure of Jaylene Rea and her property; the battery of Jaylene

13  Rea; the false arrest and imprisonment of Jaylene Rea; and violation of Jaylene Rea's

14  rights pursuant to the California Bane Act.

## II.

## JURISDICTION AND VENUE

17      6.    This civil action is brought for the redress of alleged deprivations of

18  constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth

19  and Fourteenth Amendments of the United States Constitution.  Jurisdiction is

20  founded on 28 U.S.C. §§ 1331, 1343, and 1367.

21      7.    Venue is proper in this Court under 28 U.S.C. § 1391(b), because

22  Defendants reside in, and all incidents, events, and occurrences giving rise to this

23  action occurred in the County of Los Angeles, California.

## III.

## PENDANT CLAIMS

26      8.    With respect to Plaintiffs' supplemental state claims, Plaintiffs request

27  that this Court exercise supplemental jurisdiction over such claims as they arise from

28  the same facts and circumstances which underlie the federal claims.  Plaintiffs have

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  complied with the California Tort Claims Act requirements. With respect to these

2  supplemental state claims, Plaintiffs request that this Court exercise supplemental

3  jurisdiction over such claims as they arise from the same facts and circumstances

4  which underlie the federal claims.

**IV.**

**PARTIES**

7  9.   Plaintiffs' decedent Paul Rea was an individual residing in the County of

8  LOS ANGELES, California.  The claims made by the ESTATE OF PAUL REA, are

9  brought by Leah Garcia, the successors in interest to the Estate of Paul Rea pursuant

10 to California Code of Civil Procedure § 377.32.

11 10.   At all times relevant hereto, Plaintiff LEAH GARCIA is and was a

12 resident of the County of Los Angeles, California.  She is and was the natural mother

13 of decedent Paul Rea.

14 11.   At all times relevant hereto, Plaintiff JAYLENE REA is and was a

15 resident of the County of Los Angeles, California.

16 12.   At all times relevant hereto, Plaintiff TOMMY SANCHEZ is and was a

17 resident of the County of Los Angeles, California.

18 13.   Defendant COUNTY OF LOS ANGELES (hereinafter also

19 "COUNTY") is and was, at all relevant times hereto, a public entity, duly organized

20 and existing under and by virtue of the laws of the State of California, with the

21 capacity to sue and be sued. Defendant COUNTY is responsible for the actions,

22 omissions, policies, procedures, practices and customs of its various agents and

23 agencies.

24 14.   Defendant COUNTY owns, operates, manages, directs and controls

25 Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT  (hereinafter

26 also "LASD"), also a separate public entity, which employs other Doe Defendants in

27 this action. At all times relevant to the facts alleged herein, Defendant COUNTY was

28 responsible for assuring that the actions, omissions, policies, procedures, practices

4

1 | and customs of its employees, including LASD employees, complied with the laws

2 | and the Constitutions of the United States and of the State of California.

3 |       15.    Defendant ALEX VILLANUEVA (hereinafter also "VILLANUEVA"

4 | and "SHERIFF VILLANUEVA") is and was, at all times relevant hereto, the Sheriff

5 | of Defendant COUNTY OF LOS ANGELS, the highest policymaking official of the

6 | LASD.  As Sheriff, Defendant VILLANUEVA was, at all relevant times alleged

7 | herein, responsible for the hiring, screening, training, retention, supervision,

8 | discipline, counseling, and control of all LASD employees and/or agents. SHERIFF

9 | VILLANUEVA is the supervisor of all individual Defendants and is responsible for

10 | any investigations of their gang membership and gang and other wrongful conduct.

11 | SHERIFF VILLANUEVA is responsible for taking disciplinary action and for

12 | protecting the deputies, including the Plaintiffs, from the actions of the gangs within

13 | SHERIFF VILLANUEVA'S department and administration.  SHERIFF

14 | VILLANUEVA was, at all relevant times alleged herein, responsible for the

15 | promulgation of the policies and procedures and allowance of the practices/customs

16 | pursuant to which the acts of the LASD alleged herein were committed. SHERIFF

17 | VILLANUEVA is being sued in his individual and official capacities.

18 |       16.    Defendant Deputy HECTOR SAAVEDRA-SOTO (hereinafter

19 | "SAAVEDRA-SOTO") is a sheriff's deputy working for the Los Angeles County

20 | Sheriff's Department.  Defendant SAAVEDRA-SOTO is sued in his official and

21 | individual capacity.   At all times relevant to the present action, Defendant

22 | SAAVEDRA-SOTO was acting under the color of law, to wit, under the color of the

23 | statutes, ordinances, regulations, policies, customs, and usages of Defendant

24 | COUNTY OF LOS ANGELES, as well as under the color of the statutes and

25 | regulations of the State of California.

26 |       17.    Defendant Deputy ARGELIA HUERTA (hereinafter "HUERTA") is a

27 | sheriff's deputy working for the Los Angeles County Sheriff's Department.

28 | Defendant HUERTA is sued in his official and individual capacity.   At all times

1  relevant to the present action, Defendant HUERTA was acting under the color of law,
2  to wit, under the color of the statutes, ordinances, regulations, policies, customs, and
3  usages of Defendant COUNTY OF LOS ANGELES, as well as under the color of the
4  statutes and regulations of the State of California.

5       18.    Defendant Deputy SANCHEZ (badge no. 9898) is a sheriff's deputy
6  working for the Los Angeles County Sheriff's Department.  Defendant SANCHEZ is
7  sued in her official and individual capacity.   At all times relevant to the present
8  action, Defendant SANCHEZ was acting under the color of law, to wit, under the
9  color of the statutes, ordinances, regulations, policies, customs, and usages of
10 Defendant COUNTY OF LOS ANGELES, as well as under the color of the statutes
11 and regulations of the State of California.

12      19.    Plaintiffs are informed and believe, and thereupon allege, that at all
13 times material herein that the Defendants, including the Doe Defendants, each and all
14 of them, were the agents, servants and employees, or ostensible agents, servants or
15 employees of Defendant COUNTY OF LOS ANGELES, who own, control,
16 supervise, coordinate the LASD, and the COUNTY OF LOS ANGELES is therefore
17 directly and vicariously liable for conduct of LASD, its top official, SHERIFF
18 VILLANUEVA, its Captains Ernie Chavez ("Captain Chavez") and Chris Perez
19 ("Captain Perez') and Jose J. Rios ("Captain Rios"), Chief Bob Denham ( "Chief
20 Denham"), and Lt. Eric Smitson ( "Lt. Smitson"), as well as all Defendants; all of the
21 Defendants were acting within the course and scope of said agency and employment
22 or ostensible agency and employment, except on those occasions when Defendants
23 were acting as Principals, in which case, said Defendants and each of them, were
24 negligent in the selection, hiring and use of the other Defendants.

25      20.    Plaintiffs are informed and believe, and thereupon allege, that at all
26 times material herein that the Defendants, including the Doe Defendants, each and all
27 of them, were the agents, servants and employees, or ostensible agents, servants or
28 employees of Defendant COUNTY OF LOS ANGELES, who own, control,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  supervise, coordinate with the infamous deputy gang, the "BANDITOS," and the

2  COUNTY OF LOS ANGELES is therefore directly and vicariously liable for conduct

3  of the BANDITOS, and the BANDITOS gang leaders, Rafael Munoz (aka "Big

4  Listo), Gregory Rodriguez (aka "G-Rod"), David Silverio (aka "Silver"), Michael

5  Hernandez (aka "Bam Bam"), as well as all the present Defendants and DOE

6  Defendants belonging to the BANDITOS. Plaintiffs re informed and believe, and

7  thereupon allege, that the BANDITOS was a sanctioned and authorized unit and

8  subdivision of the LASD. These Defendants were acting within the course and scope

9  of the COUNTY OF LOS ANGELES, the LASD, and BANDITOS, and said agency

10  and employment or ostensible agency and employment, except on those occasions

11  when Defendants were acting as Principals, in which case, said Defendants and each

12  of them, were negligent in the selection, hiring and use of the other Defendants.

13  21.    At all times relevant to the facts alleged herein, Defendant COUNTY

14  possessed the power and authority to adopt policies and prescribe rules, regulations,

15  and practices affecting all facets of the training, supervision, control, employment,

16  assignment and removal of individual members of the LASD. At all times relevant to

17  the facts alleged herein, Defendant COUNTY was responsible for assuring that the

18  actions, omissions, policies, procedures, practices and customs of its employees,

19  including LASD employees and agents, complied with the laws and the Constitutions

20  of the United States and of the State of California.

21  22.    At all relevant times, each of DOES 1 through 10 were employees of the

22  LASD. At all times relevant herein, each of DOES 1 through 10 was an employee

23  and/or agent of Defendant LOS ANGELES and he or she acted under color of law, to

24  wit, under the color of the statutes, ordinances, regulations, policies, customs, and

25  usages of Defendant LOS ANGELES and the LASD, as well as under the color of the

26  statutes and regulations of the State of California.

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

23.    At all relevant times, each of the Defendants DOES 1 through 10 was acting within his or her capacity as an employee, agent, representative and/or servant of LOS ANGELES and is sued in their individual capacities.

24.    On information and belief, at all relevant times, Defendant SAAVEDRA-SOTO, and DOES 1 through 10, inclusive, were residents of the County of Los Angeles, California.

25.    The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

26.    Defendants DOES 6 through 10 were also duly appointed sheriff's deputies, sergeants, lieutenants, detectives, or other supervisors, officials, executives and/or policymakers of LASD, a department and subdivision of Defendant COUNTY OF LOS ANGELES, and at all times mentioned herein said Defendants were acting in the course and scope of their employment with Defendant COUNTY OF LOS ANGELES, which is liable under the doctrine of *respondeat superior* pursuant to California Government Code § 815.2.

27.    Defendants DOES 1 through 3 are supervisorial employees for Defendant LOS ANGELES who were acting under color of law within the course and scope of their duties as sheriff's deputies for Defendant COUNTY OF LOS ANGELES. Defendants DOES 1 through 3 were acting with the complete authority and ratification of their principal, Defendant COUNTY OF LOS ANGELES.

28.    Defendants DOES 4 through 10 are managerial, supervisorial, and policymaking employees of Defendant COUNTY OF LOS ANGELES, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for Defendant COUNTY OF LOS

1  ANGELES. Defendants DOES 9 and 10 were acting with the complete authority and

2  ratification of their principal, Defendant COUNTY OF LOS ANGELES.

3    29.    Each of the Defendants caused and is responsible for the unlawful

4  conduct and resulting by, inter alia, personally participating in the conduct, or acting

5  jointly and in concert with others who did so; by authorizing, acquiescing or failing to

6  take action to prevent the unlawful conduct; by promulgating policies and procedures

7  pursuant to which the unlawful conduct occurred; by failing and refusing, with

8  deliberate indifference to Plaintiffs' rights, to initiate and maintain adequate

9  supervision and/or training; and, by ratifying the unlawful conduct that occurred by

10  agents and peace officers under their direction and control.  Whenever and wherever

11  reference is made in this Complaint to any act by a Defendant, such allegation and

12  reference shall also be deemed to mean the acts and failures to act of each Defendant

13  individually, jointly and severally. They are sued in their individual and official

14  capacities and in some manner are responsible for the acts and omissions alleged

15  herein. Plaintiffs will ask leave of this Court to amend this Complaint to allege such

16  name and responsibility when that information is ascertained.  Each of the

17  Defendants is the agent of the other.

**V.**

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

20    30.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set

21  forth herein.

22    **A. Unlawful Killing of Paul Rea – January 27, 2010**

23    31.    Paul Rea was born on August 1, 2000, and was only 18 years old at the

24  time of his death.  He was a small, slender young man measuring only five feet, two

25  inches and weighing just under 120 pounds.

26    32.    On June 27, 2019, at approximately 11:00 p.m., at or near 312 Gerhart

27  Avenue, East Los Angeles, California, decedent Paul Rea was a passenger riding in

28  Plaintiff TOMMY SANCHEZ's vehicle as they drove along Gerhart Avenue when

9

1    LASD Sheriff's Deputies HECTOR SAAVEDRA-SOTO and ARGELIA HUERTA

2    conducted an unlawful stop of the vehicle.

3          33.     Paul Rea knew that East Los Angeles sheriff's deputies belonged to a

4    deputy gang known as the BANDITOS.  Paul Rea had heard about the BANDITOS

5    propensity to be violent, to be corrupt and to harass East Los Angeles residents.  Paul

6    Rea feared for his life as Deputy HECTOR SAAVEDRA-SOTO approached the

7    passenger side of the vehicle, demanding that Paul Rea step out of the vehicle. Paul

8    Rea complied with the instructions.

9          34.     Fearing that his life was at the hands of a Banditos sheriff's deputy, Paul

10    Rea attempted to run away from Deputy HECTOR SAAVEDRA-SOTO.  Defendant

11    SAAVEDRA-SOTO shot at Paul Rea as he ran from him.

12          35.     Immediately after shooting at Paul Rea,  and as Paul Rea lay on the

13    asphalt bleeding and twisting in pain, Defendant SAAVEDRA-SOTO explained to

14    his partner Deputy ARGELIA HUERTA that he had been "socked really hard" by

15    Paul Rea.

16          36.     Defendant SAAVEDRA-SOTO killed Paul Rea without justification.

17    The shooting and killing of Paul Rea was without provocation, cause or necessity as

18    Paul Rea did not pose a threat or represent a danger of any nature to anyone,

19    including Defendant SAAVEDRA-SOTO, at the time of the shooting.  Paul Rea was

20    running away from Defendant SAAVEDRA-SOTO at the time of the shooting.

21    Accordingly, the shooting and killing of Paul Rea was unjustified and this use of

22    force was unwarranted and excessive under the circumstances.

23       **B. Unlawful Arrest, Battery and False Imprisonment of Tommy Sanchez –**

24          **January 27, 2010**

25          37.     On June 27, 2019, at approximately 11:00 p.m., at or near 312 Gerhart

26    Avenue, East Los Angeles, California, decedent Paul Rea and Plaintiff TOMMY

27    SANCHEZ drove along Gerhart Avenue when LASD Sheriff's Deputies HECTOR

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

SAAVEDRA-SOTO and ARGELIA HUERTA conducted an unlawful stop of the vehicle.

38.     Plaintiff TOMMY SANCHEZ knew that East Los Angeles sheriff's deputies belonged to a deputy gang known as the BANDITOS.  Plaintiff TOMMY SANCHEZ a had heard about the BANDITOS propensity to be violent, to be corrupt and to harass East Los Angeles residents.  Plaintiff TOMMY SANCHEZ feared for his life as Deputies HECTOR SAAVEDRA-SOTO and ARGELIA HUERTA approached their vehicle.

39.     Deputy ARGELIA HUERTA approached the driver's side of the vehicle and demanded that Plaintiff TOMMY SANCHEZ exit the vehicle.   Plaintiff TOMMY SANCHEZ complied with the instructions.

40.     Plaintiff TOMMY SANCHEZ was then subjected to an unlawful search and seizure of his person and property.  LASD Sheriff's Deputies HECTOR SAAVEDRA-SOTO and ARGELIA HUERTA placed Plaintiff TOMMY SANCHEZ under physical arrest, locked him in handcuffs, and locked him in a patrol vehicle, despite knowing that probable cause did not exist to support the conclusion that he had committed any crimes and/or that it was unlawful to continue to detain him.

41.      On or about June 27, 2019, Plaintiff TOMMY SANCHEZ was falsely arrested, battered and subjected to threats by Deputy HECTOR SAAVEDRA-SOTO, Deputy ARGELIA HUERTA and deputy personnel belonging to the BANDITOS at the East Los Angeles station, in attempt to intimidate him from asserting his constitutional rights against unreasonable searches and seizures and his right to remain silent.

**C. Campaign of Harassment Against Jaylene Rea – January 27, 2010 to the Present**

42.     On June 27, 2019, at approximately 11:00 p.m., at or near 312 Gerhart Avenue, East Los Angeles, California, claimant Plaintiff JAYLENE REA's brother, Paul Rea, was unlawfully shot and killed by LASD Deputy HECTOR SAAVEDRA-

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

SOTO.  Thereafter, Los Angeles County Sheriff's Department Sheriff's Deputy HECTOR SAAVEDRA-SOTO, Deputy ARGELIA HUERTA and deputy personnel belonging to the BANDITOS at the East Los Angeles have engaged in a campaign of harassment and retaliation against Plaintiff JAYLENE REA.  These Sheriff's Deputies have subjected Plaintiff JAYLENE REA to threats in attempt to intimidate her from asserting her constitutional rights against unreasonable searches and seizures and her right to remain silent.

43.    On October 30, 2019, Plaintiff JAYLENE REA attended a rally at the Hall of Justice regarding the shooting and killing of her brother, Paul Rea, by LASD Sheriff's Deputy HECTOR SAAVEDRA-SOTO.  This was Plaintiff JAYLENE REA'S first time speaking in public about her brother.  There, a delegation of family members, including the family of Paul Rea, sought to deliver a lawsuit to SHERIFF VILLANUEVA filed the previous day for LASD's violation of SB 1421.  After the rally, Paul Rea's family, including Plaintiff JAYLENE REA, and other community members attended a town hall hosted by SHERIFF VILLANUEVA in Temple City.  During that event, Plaintiff JAYLENE REA saw Sheriff's Deputy SANCHEZ (who identified her Badge Number as 9898) using a cellphone to take photographs of the family and sending these photographs to unknown recipients.  Another woman, who was standing with Sheriff's Deputy SANCHEZ but not wearing a uniform, also took pictures of the family.

44.    After attending these events, Plaintiff JAYLENE REA and her family, along with friends and loved ones of Paul Rea, visited his memorial site, located at the 300 block of South Gerhart Avenue in East Los Angeles, and set up an *ofrenda*, a display set up in observance of *Día de los Muertos*.  Around 10:45 p.m., an unidentified Sheriff's Deputy taunted Plaintiff JAYLENE REA and other family members and friends of Paul Rea by making a rude hand gesture through the open window of his patrol car as it drove by slowly.  Shortly thereafter, around 11:15 p.m., several patrol cars arrived at the memorial site, and unidentified Sheriff's Deputies

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

proceeded to arrest two of Paul Rea's friends.  Plaintiff JAYLENE REA used her cell phone to record both arrests.

45.     An unidentified Sheriff's Deputy proceeded to instruct one of Paul Rea's friends who was arrested to put out a blunt he had been smoking, and he complied. In full view of the unidentified Sheriff's Deputy, the friend tried to hand the extinguished blunt to Plaintiff JAYLENE REA, so he could be handcuffed.  Because the unidentified Sheriff's Deputy did not say anything or try to take the blunt, Plaintiff JAYLENE REA took it.  At that moment, a second unidentified Sheriff's Deputy said, "I want that," referring to the blunt, and a third unidentified Sheriff's Deputy responded, "I'll get it!"  Immediately and without warning, the third unidentified Sheriff's Deputy, who was approximately 6 feet tall and weighed approximately 200 pounds, walked up behind Plaintiff JAYLENE REA, who is just under 5 feet tall, grabbed her wrists and bent her arms upward behind her back, causing her to yell in pain and bend over to alleviate the tension on her arms.  This unidentified Sheriff's Deputy then walked Plaintiff JAYLENE REA over to a patrol car to search her.  No Sheriff's Deputy ever asked Plaintiff JAYLENE REA for the blunt.

46.     After searching Plaintiff JAYLENE REA, unidentified Sheriff's Deputies handcuffed her and buckled her into the back of a patrol car.  Plaintiff JAYLENE REA asked, "Where are you taking me?" but the unidentified Sheriff's Deputies only replied, "You'll see when we get there."  An unidentified Sheriff's Deputy started the patrol car and began driving faster than the speed of traffic, running through stop signs and red lights.

47.     When the patrol car passed the East Los Angeles Sheriff's Station, Plaintiff JAYLENE REA began to fear for her safety. She reiterated her earlier question, "Where are you taking me?"  This time, the unidentified Sheriff's Deputy responded, "None of your business. You'll see when we get there."  Eventually, the

1   unidentified Sheriff's Deputy took Plaintiff JAYLENE REA to a hospital and

2   subsequently the East Los Angeles Sheriff's Station.

3       48.   Plaintiff JAYLENE REA's family accompanied by an American Civil

4   Liberties Union ("ACLU") lawyer arrived at the East Los Angeles Sheriff's Station a

5   little before midnight.  LASD employees at the station said no one by Plaintiff

6   JAYLENE REA's name was in custody at the station and suggested she might be en

7   route to the station.  Plaintiff JAYLENE REA's family noted that the memorial site

8   was only about three minutes from the station.  Eventually, an unidentified Sheriff's

9   Deputy told Plaintiff JAYLENE REA's family and the ACLU lawyer that the

10  arresting Sheriff's Deputies took Plaintiff JAYLENE REA to a hospital, but she

11  would not disclose which hospital.  Only after calling five different hospitals,

12  Plaintiff JAYLENE REA's family was able to find that she had just been released

13  from a nearby hospital.

14      49.   Around 1:00 a.m., an unidentified Sheriff's Deputy informed the family

15  and the ACLU lawyer that Plaintiff JAYLENE REA arrived at the station.  Shortly

16  after, the ACLU lawyer was able to see and talk with Plaintiff JAYLENE REA.

17  Watch Commander Reynaga then spoke with the family and the ACLU lawyer and

18  informed them that Plaintiff JAYLENE REA was to be cited for "obstruction of

19  evidence" and released.  Yet, because no one at the station was trained to take

20  Plaintiff JAYLENE REA's fingerprints for Live Scan purposes in order to book her,

21  she would have to wait until about 6:00 a.m., when a jailer trained in Live Scan

22  would begin his shift.

23      50.   Plaintiff JAYLENE REA's family and the ACLU lawyer stayed at the

24  station until Plaintiff JAYLENE REA was finally released around 7:00 a.m. When

25  unidentified Sheriff's Deputies returned Plaintiff JAYLENE REA's property to her,

26  she realized they had deleted the recordings of the arrests that she had taken from her

27  phone, even though she had not given them permission to access her phone.  Plaintiff

28

14

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

JAYLENE REA was ultimately able to recover the recordings, which had been uploaded to cloud storage.

**D. The Banditos Deputy Gang Has Encouraged Violence, Corruption and Deception at the LASD East Los Angeles Station**

51.     On April 30, 2019, two months unlawful killing of Paul Rea, Board of Supervisors Hilda Solis and Sheila Kuhl brought before the County Board of Supervisors the Motion titled "Assessing County Liability in Settlements Involving Sheriff Gangs."  (http://file.lacounty.gov/SDSInter/bos/supdocs/135078.pdf  )  The Motion was approved by the Los Angeles County Board of Supervisors.

52.     In the Motion, the County Board of Supervisors made the following concessions regarding the deputy gang culture existing within the LASD:

a.     "The Los Angeles County Sheriff's Department (LASD or the Department) has a long and troubled history involving unauthorized, exclusive and secretive Department groups consisting of sworn deputies, whose membership is based on a variety of factors, including station or unit assignment, ethnicity, involvement in excessive uses of force, intimidation of fellow deputies, and harassment and even shootings of civilians. Many of these groups are known for their identical, hidden, sinister tattoos, and have been the subjects of investigations, lawsuits and settlements involving excessive uses of force, violence and dishonesty, against other Sheriff's Deputies, as well as against members of the community. These groups of deputies, whose existence is not officially sanctioned by the Department, are variously referred to as "cliques," "violent cliques," "tattoo groups," "station groups," "secret deputy sub-groups," and "secret societies." Reports of intimidating, gang-like behavior, such as aggressive member self-identification, use of street-gang lingo, flashing hand signals, and violence in the communities they serve, have led many to compare these groups to street gangs, and

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

identify them as Sheriff's gangs. Over the past several years, the violent, lawless conduct of many of these group members has led to investigations, disciplinary actions, damage claims, lawsuits and settlements reaching into the millions of dollars."

b.  "Recent revelations such as those involving the Banditos' violent conduct, or that a recently reinstated Deputy admitted to being a member of the Reapers gang, and apparently used that connection as a means to intimidate his former girlfriend, continue to alarm this Board; these groups are not "benign." Sheriff Villanueva has also forcefully defended his deputies' right to have tattoos, for whatever reason, vigorously maintaining that it is a "private matter." His recent statements avowing to reinstate deputies who have been terminated, and his recent action reinstating one such deputy who used excessive force against an arrestee, heighten this Board's alarm that whatever progress was made under prior leadership will rapidly evaporate."

53.  On September 18, 2019, three months after the unlawful killing of Paul Rea, eight Sheriff's Deputies brought a lawsuit against the COUNTY OF LOS ANGELES for wrongdoings by the BANDITOS, *Art Hernandez, et al. v. County of Los Angeles, et al.*, Los Angeles County Superior Court, Case No. 19STCV33158. The Plaintiffs, all of whom were Sheriff's Deputies who were previously stationed at the LASD East Los Angeles Station, brought a lawsuit against the COUNTY OF LOS ANGELES alleging that the LASD encouraged the BANDITOS gang culture at the East Los Angeles Station, allowing the following heinous behavior:

a.  Plaintiffs were threatened and bullied in attempts to get them to conform to the corrupt culture;

b.  The Plaintiffs were shunned and ostracized at the East Los Angeles for doing their jobs and not following the BANDITOS gang;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.   Plaintiffs were assaulted and battered by members of the BANDITOS gang, with some of Plaintiffs being hit and choked unconscious;

d.   Plaintiffs were shaken down to pay some of their salary, "taxes," money out of their pockets, to the gang;

e.   Plaintiffs were denied their requested transfers away from the hostile environment and were forced to endure continuing harassment and discrimination;

f.   Plaintiffs were not provided the required back up on dangerous calls and their lives were subsequently regularly put at risk;

g.   Plaintiffs were pressured to quit their jobs or leave the station;

h.   Plaintiff's work was regularly interrupted as they were harassed with hostile messages on the vehicle computers;

i.   Plaintiffs were sent out on excessive calls as the Banditos sought to overload them with stress;

j.   The BANDITOS gang committed assaults and batteries against the Plaintiffs and other Sheriff's Deputies to instill fear through intimidation to maintain the corrupt status quo and make certain of the code of silence; and

k.   The BANDITOS caused their fellow deputies, the Plaintiffs, to fear for their lives on a daily basis, not from violent offenders in the community but rather from their own fellow sworn deputies.

54.   The *Hernandez* Plaintiffs, all of whom were Sheriff's Deputies previously assigned to work at the LASD East Los Angeles Station, further alleged that instead of properly investigating the claims brought by the Plaintiffs and protecting the deputy employees, the COUNTY OF LOS ANGELES informed the BANDITOS gang leaders that the Plaintiffs had blown the whistle on them. Plaintiffs alleged that they were retaliated against by the BANDITOS gang leaders. Plaintiffs were subjected to savage beatings by the BANDITOS gang leaders and gang

17

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    members at a LASD party.  The Plaintiffs pushed, hit, kicked, and stomped on by the

2    BANDITOS gang leaders and members.  One of the Plaintiffs was punched so

3    severely that he became unconscious while another Plaintiff was strangled.  The

4    *Hernandez* Plaintiffs alleged that after these savage attacks, the COUNTY OF LOS

5    ANGELES failed to take steps to protect them from the BANDITOS.  As alleged by

6    the *Hernandez* Plaintiffs, the COUNTY OF LOS ANGELES failed to order the

7    LASD Internal Affairs Bureau to investigate these egregious acts by the BANDITOS

8    and no disciplinary action was taken by LASD in relation to incidents.

9        55.   The *Hernandez* Plaintiffs alleged the following egregious ongoing

10    conduct specific to the BANDITOS gang leaders:

11        a.   "Big Listo" succeeded Eric Valdez, "the Godfather," as the self-

12           proclaimed top shot caller of the BANDITOS gang. "Big Listo," who

13           was trained by SHERIFF VILLANUEVA, had been fired previously for

14           committing domestic violence assault. But "Big Listo" was inexplicably

15           later rehired as a deputy, and was made a Training Officer, where he

16           could severely abuse the trainees and create a new breed of aggressive

17           prospects.

18        b.   "G-Rod" was also previously fired for filing a false police report. "G-

19           Rod" can also be seen on a video on YouTube, falsely detaining a non-

20           suspect in the East Los Angeles Community. After the Defendant

21           County paid a settlement for over $500,000 to "G-Rod's" false report

22           victim in 2013, the COUNTY OF LOS ANGELES inexplicably rehired

23           "G-Rod" in 2017 even though video proved his report was false.

24        c.   "Silver" also became a Training Officer, and he did his part to harass

25           and bully the trainees and rookies and demand excessive arrests.

26        56.   The *Hernandez* Plaintiffs alleged that in June 2018, a year prior to the

27    unlawful killing of Paul Rea, an anonymous letter was sent to the LASD East Los

28    Angeles Station and the Sheriff's office, sounding the alarm about the BANDITOS.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

The letter spelled out many of the facts and allegations detailed in the *Hernandez* complaint.  According to the *Hernandez* Plaintiffs, LASD Lt. Smitson admitted that after the letter arrived at the Sheriff's Office, LASD Chief Robert Denham ordered it buried.

57.    As a result of the COUNTY OF LOS ANGELES' failure to act, the BANDITOS gang was further emboldened and continued to encourage an environment of violence, corruption and fraud, all of which led to the constitutional violations and harms caused to decedent Paul Rea, Plaintiff LEAH GARCIA, Plaintiff JAYLENE REA, and Plaintiff TOMMY SANCHEZ.

# VI.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Unreasonable Search & Seizure

### 42 U.S.C. § 1983

### As Against Defendant HECTOR SAAVEDRA-SOTO, ARGELIA HUERTA, and DOES 1 through 10

58.    Plaintiffs ESTATE OF PAUL REA, JAYLENE REA, and TOMMY SANCHEZ reallege and incorporate the foregoing paragraphs as if set forth herein.

59.    Defendant SAAVEDRA-SOTO's actions described herein violated Paul Rea's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Paul Rea to unreasonable searches and seizures of his person.  At the time Paul Rea was shot and killed, he was not engaging in any assaultive or threatening conduct. Under the totality of the relevant circumstances that existed, Paul Rea posed no danger or threat to Defendant SAAVEDRA-SOTO, or anyone else. The shooting and killing of Paul Rea was unreasonable under the circumstances in every respect.

60.     Defendants SAAVEDRA-SOTO, ARGELIA HUERTA, and DOES 1 through 5's actions, as described herein, violated Plaintiff TOMMY SANCHEZ's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Plaintiff TOMMY SANCHEZ to unreasonable searches and seizures of his person and property.   Defendants placed Plaintiff TOMMY SANCHEZ under physical arrest, locked him in handcuffs, and locked him in a patrol vehicle, despite knowing that probable cause did not exist to support the conclusion that Plaintiff TOMMY SANCHEZ had committed any crimes and/or that it was unlawful to continue to detain Plaintiff TOMMY SANCHEZ.  Defendants unlawfully searched and/or caused Plaintiff TOMMY SANCHEZ's person and property to be unlawfully searched.  Such conduct was unreasonable under the circumstances in every respect and was undertaken intentionally and recklessly by the Defendants.

61.     Defendants DOES 1 through 5's actions, as described herein, violated Plaintiff JAYLENE REA's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Plaintiff JAYLENE REA to unreasonable searches and seizures of her person and property.   Defendants forcefully placed Plaintiff JAYLENE REA under physical arrest, locked her in handcuffs, and locked her in a patrol vehicle, despite knowing that probable cause did not exist to support the conclusion that Plaintiff JAYLENE REA had committed any crimes and/or that it was unlawful to continue to detain Plaintiff JAYLENE REA. Defendants unlawfully searched and/or caused Plaintiff JAYLENE REA's person and property to be unlawfully searched.  Such conduct was unreasonable under the circumstances in every respect and was undertaken intentionally and recklessly by the Defendants.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

62.    These actions violated rights of decedent Paul Rea, Plaintiff TOMMY SANCHEZ, and Plaintiff JAYLENE REA's right to be free from unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution.

63.    The violation of Plaintiffs' Fourth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by the COUNTY OF LOS ANGELES and the LASD of subjecting private citizens to unreasonable searches and seizures in violation of the Fourth Amendment to the United States.

64.    Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

65.    The unauthorized, unwarranted killing of Paul Rea was willful and done with a deliberate disregard for the rights and safety of Paul Rea, and therefore warrants the imposition of punitive damages as to Defendant SAAVEDRA-SOTO.

66.    After being shot by Defendant SAAVEDRA-SOTO, Paul Rea endured great physical and emotional pain and suffering.

67.    Accordingly, Defendants SAAVEDRA-SOTO, ARGELIA HUERTA and Defendant DOES 1 through 5 are liable to Plaintiffs ESTATE OF PAUL REA, TOMMY SANCHEZ, and JAYLENE SANCHEZ for compensatory damages pursuant to 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Customs and Practices**

**42 U.S.C. § 1983**

**As Against Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 10**

68.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

On and before June 27, 2019, and prior to the killing of Paul Rea, Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and Does 1 through 10, and each of them, were aware that Defendant SAAVEDRA-SOTO, HUERTA, SANCHEZ, and DOES 1 through 5, all of whom are believed to be a part of the deputy gang BANDITOS, had engaged in a custom and practice of callous and reckless use of force, unlawful stops and arrests, and harassment against the families whose loved ones were killed by Sheriff's Deputies who were stationed at the LASD East Los Angeles Station and who were members of the BANDITOS deputy gang.

69.    Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and Does 1 through 10, and each of them, acting with deliberate indifference to the rights and liberties of the public in general, and of the present Plaintiffs, knowingly maintained, enforced and applied customs and practices of:

a.    Encouraging, accommodating, or ratifying the shooting of East Los Angeles residents;

b.    Encouraging, accommodating, or ratifying the use of excessive and unreasonable force, including deadly force;

c.    Encouraging, accommodating, or facilitating a "code of silence" among LASD officers/supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up;

d.    Employing and retraining, as sheriff's deputies and other personnel, including individuals such as Defendants SAAVEDRA-SOTO, HUERTA, and SANCHEZ, and DOES 1 through 5, all of whom are believed to belong to the deputy gang BANDITOS, who said Defendants knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating members of the public, particularly residents of East Los Angeles;

22

e. Inadequately supervising, training, and disciplining LASD sheriff's deputies, Defendants SAAVEDRA-SOTO, HUERTA, and SANCHEZ, and DOES 1 through 5, all of whom are believed to belong to the deputy gang BANDITOS, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by sheriff's deputies;

g. Assigning sheriff's deputies with known histories of misconduct, including criminal conduct and gang affiliation with BANDITOS, in accord with LASD custom of assigning these sheriff's deputies to come into contact with members of the public;

h. Ratifying wrongful conduct by sheriff's deputies and supervisors which result in serious injuries, death and harassment to members of the public, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; and

i. Failing to discipline, investigate and take corrective actions against LASD sheriff's deputies for misconduct, including, but not limited to, unlawful detention, excessive force, false reports, campaigns of harassment and gang affiliation to the BANDITOS.

70. By reason of the aforementioned customs and practices, Plaintiffs were severely injured and subjected to pain and suffering as alleged above in the First Claim for Relief.

71. Defendants COUNTY OF LOS ANGELES, LASD and Does 1 through 10, with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these Defendants

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   condoned, tolerated and through actions and inactions thereby ratified such customs
2   and practices.  Said Defendants also acted with deliberate indifference to the
3   foreseeable effects and consequences of these policies with respect to the
4   constitutional rights of Plaintiffs and other individuals similarly situated.

5       72.   Plaintiffs are informed and believe and thereon allege that Defendants
6   SAAVEDRA-SOTO, HUERTA, and SANCHEZ, and DOES 1 through 5, all of
7   whom are believed to belong to the deputy gang BANDITOS,  each had a history and
8   propensity for acts of the nature complained of herein and manifested such propensity
9   prior to and during their employment and/or agency with Defendant COUNTY OF
10  LOS ANGELES. Plaintiffs are further informed and believe and thereon allege that
11  Defendants COUNTY OF LOS ANGELES, LASD, and Does 1through 10, knew, or
12  in the exercise of reasonable care should have known, of such prior history and
13  propensity at the time such individuals were hired and/or during the time of their
14  employment. These Defendants' disregard of this knowledge and/or failure to
15  adequately investigate and discover and correct such facts caused the violation of
16  Plaintiffs' constitutional rights.

17      73.   The policies, practices, and customs implemented and maintained and
18  still tolerated by Defendants COUNTY OF LOS ANGELES, LASD and Does 1
19  through 10, and each of them, were affirmatively linked to and were a significantly
20  influential force behind the injuries of Plaintiffs.

21      74.   By reason of the aforementioned acts and omissions, Plaintiffs were
22  harmed by Defendants SAAVEDRA-SOTO, HUERTA, and SANCHEZ, and DOES
23  1 through 5, all of whom are believed to belong to the deputy gang BANDITOS.

24      75.   Accordingly, Defendant COUNTY OF LOS ANGELES is liable to
25  Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

26  ///
27  ///
28  ///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## THIRD CLAIM FOR RELIEF

**Supervisory Liability for Ratification and**

**Failure to Train, Supervise and Discipline**

**42 U.S.C. § 1983**

**As Against Defendant CHIEF GREG SUHR, and DOES 1 through 10**

76.     Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

77.     On and before June 27, 2019, and prior to the killing of Paul Rea, Defendant SHERIFF VILLANUEVA and Does 1 through 10, and each of them, were aware that Defendants SAAVEDRA-SOTO, HUERTA, and SANCHEZ, and DOES 1 through 5, all of whom are believed to belong to the deputy gang BANDITOS, had custom and practice of callous and reckless use of force, unlawful stops and arrests, and harassment against the families whose loved ones were killed by Sheriff's Deputies who were stationed at the LASD East Los Angeles Station and who were members of the BANDITOS deputy gang, as summarized above.

78.     Defendant SHERIFF VILLANUEVA and Does 1 through 10 are sued in their individual and personal capacities as supervisors and line officers on duty at the time of the incidents alleged herein, and for their ongoing duties as supervisors responsible for the investigation of said incidents.

79.     SHERIFF VILLANUEVA is sued in his individual and personal capacity.  SHERIFF VILLANUEVA knew or reasonably could have known, of his subordinates' ongoing constitutional violations, use of excessive force on members of the public, unlawful searches and seizures, campaigns of harassment and retaliation against families of loved ones who were killed by LASD/BANDITOS Sheriff's Deputies, and failure to investigate incidents involving use of force.  SHERIFF VILLANUEVA failed to act to prevent these acts and he acquiesced, condoned or ratified a custom, practice or policy of ongoing misconduct by his subordinates, including custom and practice of callous and reckless use of force, unlawful stops and

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

arrests, and harassment against the families whose loved ones were killed by Sheriff's Deputies who were stationed at the LASD East Los Angeles Station and who were members of the BANDITOS deputy gang. SHERIFF VILLANUEVA is sued in his individual capacity for his own culpable action or inaction in the training, supervisor, or control of his subordinates. SHERIFF VILLANUEVA is also sued for his acquiescence in the constitutional deprivations as alleged herein and/or conduct that showed a reckless or callous indifference to the rights of persons by implementation of policies, rules or directives. SHERIFF VILLANUEVA's actions and/or inactions set in motion a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional violations alleged herein

80.    Plaintiffs are informed and believe and thereon allege that prior to the incident alleged herein, on or before June 27, 2019, and subsequent hereto, SHERIFF VILLANUEVA knew or reasonably should have known, that LASD sheriff's deputies, including custom and practice of callous and reckless use of force, unlawful stops and arrests, and harassment against the families whose loved ones were killed by Sheriff's Deputies who were stationed at the LASD East Los Angeles Station and who were members of the BANDITOS deputy gang, in the course and scope of their employment under color of law, committed similar acts of using unjustified excessive and deadly force, unlawful searches and seizures, campaigns of harassment and retaliation against families whose loved ones were killed by LASD/BANDITOS Sheriff's Deputies and failure to investigate officer misconduct and violation of constitutional rights, which wrongful conduct resulted in ongoing use of excessive force against members of the public.

81.    Defendants SHERIFF VILLANUEVA and Does 1 through 10, and each of them, acting with deliberate indifference to the rights and liberties of the public in general, and of the present Plaintiffs, knowingly maintained, enforced and applied customs and practices of:

a.   Ratifying wrongful conduct by LASD/BANDITOS sheriff's deputies and supervisors which result in serious injuries and death to members of the public, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

b.   Failing to discipline, investigate and take corrective actions against LASD/BANDITOS sheriff's deputies for misconduct, including, but not limited to, unlawful detention, excessive force, false reports and vicious campaigns of harassment and retaliation;

c.   Issuing false public statements exonerating LASD/BANDITOS Sheriff's Deputies and other personnel involved in such incidents even after being presented with contradictory reliable evidence, including physical evidence and eyewitness statements from members of the East Los Angeles community;

d.   Employing and retraining, as LASD/BANDITOS sheriff's deputies and other personnel, including individuals such as custom and practice of callous and reckless use of force, unlawful stops and arrests, and harassment against the families whose loved ones were killed by Sheriff's Deputies who were stationed at the LASD East Los Angeles Station and who were members of the BANDITOS deputy gang, who said Defendants knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating members of the public; and

e.   Inadequately supervising, training, controlling, assigning, and disciplining LASD/BANDITOS sheriff's deputies, including custom and practice of callous and reckless use of force, unlawful stops and arrests, and harassment against the families whose loved ones were killed by Sheriff's Deputies who were stationed at the LASD East Los Angeles

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Station and who were members of the BANDITOS deputy gang, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

82.     By reason of the aforementioned customs and practices, Plaintiffs were severely injured and subjected to pain and suffering as alleged above in the First Claim for Relief.

83.     By reason of the aforementioned acts and omissions, Plaintiffs were harmed by custom and practice of callous and reckless use of force, unlawful stops and arrests, and harassment against the families whose loved ones were killed by Sheriff's Deputies who were stationed at the LASD East Los Angeles Station and who were members of the BANDITOS deputy gang.

84.     Accordingly, Defendant COUNTY OF LOS ANGELES is liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983, and Defendant SHERIFF VILLANUEVA is liable to Plaintiffs for punitive damages pursuant to 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF
### Interference with Familial Integrity
### Substantive Due Process Violation
### 42 U.S.C. § 1983
### As Against Defendants HECTOR SAAVEDRA-SOTO, SHERIFF ALEX VILLANUEVA, COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 10

85.     Plaintiff LEAH GARCIA realleges and incorporates the foregoing paragraphs as if set forth herein.

86.     The present claim is brought pursuant to 42 U.S.C. § 1983, for violation of the right of familial integrity guaranteed by the Fourteenth Amendment of the United States Constitution.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

87.     As alleged above, the shooting and killing of Paul Rea was unreasonable under the circumstances of the encounter between Paul Rea and Defendant SAAVEDRA-SOTO.  As such, the shooting and killing of Paul Rea violated the constitutional limits on police use of deadly force in violation of the Fourth Amendment's limits on unreasonable seizures.

88.     At the same time, the shooting and killing of Paul Rea by Defendant SAAVEDRA-SOTO violated the rights of Plaintiff LEAH GARCIA to be free from police interference in their relationship with Paul Rea.

89.     The unreasonable conduct of Defendant SAAVEDRA-SOTO was the direct and proximate cause of the death of Paul Rea. As a result of the unreasonable conduct of Defendant SAAVEDRA-SOTO, Plaintiffs lost Paul Rea, as well as his love, affection, society and moral support.

90.     The unreasonable conduct of these Defendants was willful and done with a deliberate disregard for the rights and safety of Paul Rea and the present Plaintiffs and therefore warrants the imposition of punitive damages as to Defendant SAAVEDRA-SOTO.

91.     Accordingly, Defendants COUNTY OF LOS ANGELES and DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF

### Substantive Due Process Violations (42 U.S.C. §

### As Against Defendants SANCHEZ and DOES 1 through 10

92.     Plaintiff JAYLENE REA realleges and incorporates the foregoing paragraphs as if set forth herein.

93.     Defendant SANCHEZ and DOES 1 through 5's actions, as described herein, violated Plaintiff JAYLENE REA's rights protected by the Substantive Due Process clause under the Fourteenth Amendment to the United States Constitution, by subjecting Plaintiff JAYLENE REA to a campaign of harassment and retaliation

against Plaintiff JAYLENE REA following the unlawful killing of her brother Paul Rea. Defendants have subjected Plaintiff JAYLENE REA to threats in attempt to intimidate her from asserting her constitutional rights against unreasonable searches and seizures and her right to remain silent.

94. The violation of Plaintiff JAYLENE REA's Fourteenth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by the COUNTY OF LOS ANGELES and the LASD of subjecting private citizens to harassment and retaliation in violation of the Substantive Due Process Clause under the Fourteenth Amendment to the United States Constitution.

95. Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

96. Accordingly, Defendant SANCHEZ and Defendant DOES 1 through 5 are liable to Plaintiff JAYLENE SANCHEZ for compensatory damages pursuant to 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF

### Negligent Hiring, Training and Supervision

### As Against Defendants SHERIFF ALEX VILLANUEVA, COUNTY OF LOS ANGELES, and DOES 4 through 10

97. Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

98. Plaintiffs are informed and believe, and on that basis allege that prior to wrongful conduct, as alleged herein, Defendants SHERIFF ALEX VILLANUEVA and DOES 4 through 10, all of whom were managerial, supervisorial, and policymaking employees of Defendant COUNTY OF LOS ANGELES, knew or should have reasonably known that Defendants SAAVEDRA-SOTO, HUERTA, SANCHEZ and DOES 1 through 5, all of whom are believed to be deputy personnel

belonging to the BANDITOS deputy gang, were capable of such egregious and wrongful conduct.

99.    Defendants SHERIFF ALEX VILLANUEVA and DOES 4 through 10, all of whom were managerial, supervisorial, and policymaking employees of Defendant COUNTY OF LOS ANGELES had a duty to protect residents of East Los Angeles from harm.  Defendants had a duty to hire, train, supervise, and retain qualified employees and agents who do not target residents of East Los Angeles, and do not verbally assault and harass them and do not try to physically harm them.

100.    Defendants SHERIFF ALEX VILLANUEVA and DOES 4 through 10, all of whom were managerial, supervisorial, and policymaking employees of Defendant COUNTY OF LOS ANGELES, had actual notice and warning that the BANDITOS deputy gang were a group that was violent, corrupt, and harassing. These Defendants should have known that the BANDITOS had previously engaged in dangerous and inappropriate conduct, and that it was or should have been foreseeable that the BANDITOS would engage in further dangerous conduct.

101.    Plaintiffs are informed and believe, and on that basis allege, that the Defendants SHERIFF ALEX VILLANUEVA and DOES 4 through 10, all of whom were managerial, supervisorial, and policymaking employees of Defendant COUNTY OF LOS ANGELES, breached their duty of care as they failed to intervene, to protect and warn residents of East Los Angeles, including the Plaintiffs.

102.    These Defendant breached its duty of care by failing to adequately hire, supervise, and retain Defendants SAAVEDRA-SOTO, HUERTA, SANCHEZ and DOES 1 through 5, all of whom are believed to be part of the deputy gang BANDITOS; by failing to investigate or otherwise confirm or deny facts and allegations about the BANDITOS and Defendants SAAVEDRA-SOTO, HUERTA, SANCHEZ and DOES 1 through 5; by failing to adequately monitor and supervise the BANDITOS, including Defendants SAAVEDRA-SOTO, HUERTA, SANCHEZ and DOES 1 through 5; by failing to intervene and stop these Defendants from

31

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    committing their wrongful acts. SHERIFF VILLANUEVA and DOES 4 through 10

2    did nothing to protect the Plaintiffs.

3        103.   Plaintiffs are informed and believe, and on that basis allege, that the

4    Defendants SHERIFF ALEX VILLANUEVA and DOES 4 through 10, all of whom

5    were managerial, supervisorial, and policymaking employees of Defendant COUNTY

6    OF LOS ANGELES, were negligent in its hiring practices, as it hired deputies who

7    were likely to commit such wrongful acts.

8        104.   Plaintiffs are informed and believe, and on that basis allege, that the

9    Defendants SHERIFF ALEX VILLANUEVA and DOES 4 through 10, all of whom

10   were managerial, supervisorial, and policymaking employees of Defendant COUNTY

11   OF LOS ANGELES, negligent in retaining the BANDITOS, including Defendants

12   SAAVEDRA-SOTO, HUERTA, SANCHEZ and DOES 1 through 5, and negligent

13   for not supervising them, after they had sufficient notice about the ongoing wrongful

14   conduct; SHERIFF VILLANUEVA and DOES 4 through 10 had been warned about

15   the need for intervention to fix the problem of the BANDITOS controlling the East

16   Los Angeles Station were violence, corruption and harassment was encouraged. At

17   all times herein mentioned, these Defendants did not have a system or procedure in

18   place to oversee or monitor the BANDITOS or a system or procedure to reasonably

19   investigate and supervise BANDITOS, including Defendants SAAVEDRA-SOTO,

20   HUERTA, SANCHEZ and DOES 1 through 5.

21       105.   As a direct, foreseeable and proximate cause of Defendants SHERIFF

22   VILLANUEVA and DOES 4 through 10's negligence and the resulting acts,

23   Plaintiffs were physically harmed and suffered severe mental anguish and physical

24   pain and continue to suffer humiliation, embarrassment, anxiety, mental anguish, and

25   emotional distress.

26

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## SEVENTH CLAIM FOR RELIEF

### Assault & Battery

**As Against Defendants HECTOR SAAVEDRA-SOTO, ARGELIA HUERTA, COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 10**

106.   Plaintiffs ESTATE OF PAUL REA, JAYLENE REA, and TOMMY SANCHEZ reallege and incorporate the foregoing paragraphs as if set forth herein.

107.   This cause of action arises under the general laws and Constitution of the State of California.  Plaintiffs have complied with the California Tort Claims Act requirements.

108.   Defendant SAAVEDRA-SOTO assaulted and battered Paul Rea, as pleaded herein above, when said Defendants acted intentionally to cause, and did cause, said non-consensual, unprivileged, unjustified, excessive, harmful or offensive contact to the person of Paul Rea by unreasonably and unjustly shooting and killing Paul Rea.

109.   Defendant SAAVEDRA-SOTO, HUERTA and DOES 1 through 5 assaulted and battered Plaintiff TOMMY SANCHEZ, as pleaded herein above, when said Defendants acted intentionally to cause, and did cause, said non-consensual, unprivileged, unjustified, excessive, harmful or offensive contact to the person of Plaintiff TOMMY SANCHEZ.

110.   Defendant DOES 1 through 5 assaulted and battered Plaintiff JAYLENE REA, as pleaded herein above, when said Defendants acted intentionally to cause, and did cause, said non-consensual, unprivileged, unjustified, excessive, harmful or offensive contact to the person of Plaintiff JAYLENE REA.

111.   These acts were undertaken by Defendants intentionally and without justification.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

112.   As a result of these deliberate and unjustified acts undertaken by Defendants, decedent Paul Rea, Plaintiff TOMMY SANCHEZ, and Plaintiff JAYLENE REA endured great physical and emotional pain and suffering.

113.   These deliberate and unjustified acts undertaken by Defendants were willful and done with a deliberate disregard for the rights and safety of decedent Paul Rea, Plaintiff TOMMY SANCHEZ, and Plaintiff JAYLENE REA, therefore, warrant the imposition of punitive damages as to Defendants SAAVEDRA-SOTO, HUERTA and DOES 1 through 5.

114.   Defendants COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT are liable to Plaintiffs for the acts of their public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of *respondeat superior*, codified at California Government Code § 815.2.

## EIGHTH CLAIM FOR RELIEF

### Wrongful Death

### As Against Defendants HECTOR SAAVEDRA-SOTO, COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 10

115.   Plaintiff LEAH GARCIA realleges and incorporates the foregoing paragraphs as if set forth herein.

116.   This cause of action arises under the general laws and Constitution of the State of California.  Plaintiffs have complied with the California Tort Claims Act requirements.

117.   Defendant SAAVEDRA-SOTO, while working as sheriff's deputies of the LASD, and acting within the course and scope of their duties, employed negligent tactics and intentionally and/or without due care shot Paul Rea.  The shooting resulted as a result of Defendant SAAVEDRA-SOTO's unsafe, improper and negligent tactics.  As a result of these intentional acts and negligence, Paul Rea suffered serious

1    injuries and lost his life.  Defendant SAAVEDRA-SOTO had no legal or reasonable

2    justification for their actions.

3        118.   As a direct and proximate result of the conduct of Defendant

4    SAAVEDRA-SOTO, Paul Rea lost his life.  Plaintiffs have been deprived of the life-

5    long love, affection, comfort, and society of Paul Rea, and will continue to be so

6    deprived for the remainder of their natural lives.  Plaintiffs were further caused to pay

7    funeral and burial expenses as a result of the conduct of Defendant SAAVEDRA-

8    SOTO.

9        119.   Defendants COUNTY OF LOS ANGELES and LOS ANGELES

10   COUNTY SHERIFF'S DEPARTMENT are vicariously liable for the wrongful,

11   intentional and/or negligent acts of Defendant SAAVEDRA-SOTO, and DOES 1

12   through 10, pursuant to California Government Code § 815.2, which provides that a

13   public entity is liable for the injuries caused by its employees within the scope of the

14   employment if the employee's act would subject him or her to liability.

## NINTH CLAIM FOR RELIEF

### Survivorship

**As Against Defendants HECTOR SAAVEDRA-SOTO, COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 10**

20       120.   Plaintiff ESTATE OF PAUL REA reallege and incorporate the

21   foregoing paragraphs as if set forth herein.

22       121.   This cause of action arises under the general laws and Constitution of the

23   State of California.  Plaintiffs have complied with the California Tort Claims Act

24   requirements.

25       122.   Plaintiff ESTATE OF PAUL REA, by and through successor in interest,

26   Leah Garcia, and Plaintiff LEAH GARCIA are the legal heirs and successors in

27   interest of Paul Rea, and the present claim is brought by them as the legal heirs and

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   successors in interest of Paul Rea as permitted by of the California Code of Civil

2   Procedure § 377.30.

3       123.   On June 27, 2019, Paul Rea lost his life and causes of action arose in his

4   favor before he died.  Paul Rea would have been a Plaintiff in this action, had

5   Defendant SAAVEDRA-SOTO not shot and killed him.

6       124.   On June 27, 2019, and for a measurable period of time before the death

7   of Paul Rea, personal property of his was damaged or destroyed, and while alive said

8   decedent had valid claims and causes of action to recover damages for, among other

9   things, personal property damage, and prejudgment interest as allowed by law and

10  costs of suit.

11      125.   The conduct of all the Defendants as herein set forth above was tortious

12  in that, among other things, Defendant SAAVEDRA-SOTO deliberately shot Paul

13  Rea without cause or justification, or otherwise contributed to the shooting as spelled

14  out herein above.

15      126.   Said conduct was the direct and proximate cause of the damages suffered

16  by decedent Paul Rea, as alleged above, which were sustained and incurred for a

17  measurable period of time by him before his death.  Plaintiffs, therefore, seek

18  recovery for personal property damages, and all other related expenses, damages, and

19  losses, including punitive damages, as permitted by Code of Civil Procedure §

20  377.34, against the present non-government entity Defendants, according to proof at

21  trial.

22                     **TENTH CLAIM FOR RELIEF**

23                        **False Imprisonment**

24  **As Against Defendants HECTOR SAAVEDRA-SOTO, ARGELIA HUERTA,**

25      **COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S**

26            **DEPARTMENT and DOES 1 through 10**

27      127.   Plaintiffs JAYLENE REA and TOMMY SANCHEZ reallege and

28  incorporate the foregoing paragraphs as if set forth herein.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

128.    Plaintiff is informed, believes, and herein alleges that at all relevant times mentioned herein, Defendants SAAVEDRA-SOTO, HUERTA and DOES 1 through 5 intentionally deprived Plaintiffs JAYLENE REA and TOMMY SANCHEZ of their freedom of movement by use of power of authority and/or intimidation. Plaintiffs were restrained by Defendants and each of their actions.

129.    At all times, Plaintiffs JAYLENE REA and TOMMY SANCHEZ did not consent to these acts or omissions.

130.    As a result of Defendants' actions as alleged herein above, Plaintiffs JAYLENE REA and TOMMY SANCHEZ were harmed physically and emotionally. Each of Defendant's acts was a substantial factor in causing Plaintiffs' harm.

131.    Plaintiffs seek compensatory damages incurred as a proximate result of Defendants' false imprisonment of Plaintiffs JAYLENE REA and TOMMY SANCHEZ.  Plaintiffs have suffered great physical and emotional harm and will continue to suffer such harm in the future as a direct and proximate result of the aforementioned acts or omissions by Defendants.

132.    The acts or omissions of Defendants, as alleged above were willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of exemplary and punitive damages.

**ELEVENTH CLAIM FOR RELIEF**

**Civil Rights Violations (Cal. Civ. Code § 52.1)**

**As Against Defendants HECTOR SAAVEDRA-SOTO, ARGELIA HUERTA, SANCHEZ, COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 10**

133.    Plaintiff ESTATE OF PAUL REA, JAYLENE REA, and TOMMY SANCHEZ reallege and incorporate the foregoing paragraphs as if set forth herein.

134.    This cause of action arises under the general laws and Constitution of the State of California, including California Civil Code § 52.1 and California

1  Government Code §§820 and 815.2.  Plaintiffs complied with the California Tort
2  Claims Act requirements.

3       135.   As a result of the conduct of Defendants HECTOR SAAVEDRA-SOTO,
4  ARGELIA HUERTA, SANCHEZ, and DOES 1 through 5, all of whom are believed
5  to be part of the deputy gang BANDITOS, 10, by the use of threats, intimidation, and
6  coercions, interfered with Plaintiffs' exercise and enjoyment of the rights secured by
7  the United States Constitution and other Federal laws, the Constitution and laws of
8  the State of California, and their rights under California Civil Code § 52.1.

9       136.   All of the above acts and omissions of these Defendants, and each of
10  them, were wilful, wanton, malicious and oppressive, thereby justifying the awarding
11  of exemplary and punitive damages as to said Defendants.

12       137.   Defendants, and each of them, for the respective acts and violations
13  pleaded herein above, are liable to Plaintiffs for damages, penalties and attorneys'
14  fees as provided in California Civil Code § 52.1.

15

16                                **VII.**
17                         **PRAYER FOR RELIEF**

18       WHEREFORE, Plaintiffs requests entry of judgment in their favor and against
19  Defendants as follows:

20       A.       For compensatory damages, including pre-death pain and suffering
21  damages, general damages and special damages, and statutory damages for violation
22  of the laws and Constitution of the United States and State of California, in an
23  amount to be determined at trial;

24       B.       For punitive damages against Defendants ALEX VILLANUEVA,
25  HECTOR SAAVEDRA-SOTO, ARGELIA HUERTA, SANCHEZ pursuant to 42
26  U.S.C. § 1983, and any other applicable laws or status, in an amount sufficient to
27  deter and make an example of each non-government entity Defendant;
28       C.       For prejudgment interest to be determined at trial;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1       D.       For reasonable costs of this suit and attorneys' fees, including

2  attorneys' fees pursuant to 42 U.S.C. § 1988; and

3       E.       For such further other relief as the Court may deem just, proper, and

4  appropriate.

5

6  February 21, 2020            CASILLAS & ASSOCIATES

7

8                      By:  */s/  Arnoldo Casillas*
                            ARNOLDO CASILLAS

9                      DENISSE O. GASTÉLUM
                      Attorneys for Plaintiffs,

10                    ESTATE OF PAUL REA, by and through

11                    successor in interest, Leah Garcia; LEAH
                      GARCIA, individually, JAYLENE REA,

12                    individually; TOMMY SANCHEZ,

13                    individually

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

## DEMAND FOR JURY TRIAL

2

Plaintiff ESTATE OF PAUL, by and through successor in interest, Leah

3

Garcia, and Plaintiffs LEAH GARCIA, JAYLENE REA, and TOMMY SANCHEZ,

4

hereby demand trial by jury.

5

6

February 21, 2020                            CASILLAS & ASSOCIATES

7

8

By: _/s/ Arnoldo Casillas_
ARNOLDO CASILLAS

9

DENISSE O. GASTÉLUM
Attorneys for Plaintiffs,

10

ESTATE OF PAUL REA, by and through
successor in interest, Leah Garcia; LEAH

11

GARCIA, individually, JAYLENE REA,
individually; TOMMY SANCHEZ,

12

individually

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL