# Exhibit 7

Defendants' Summary Judgment Exhibit No. 7

Page 6

# Los Angeles County Sheriff's Department
## Supervisor's Report on Use of Force
**Page 1 of 12**

### Incident Information

| URN: | 9 | 1 | 9 | - | 1 | 5 | 1 | 7 | 1 | - | 0 | 2 | 8 | 5 | - | 3 | 9 | 9 | Date: | 10/30/19 | Time: | 2245 |

| Location: | 324 South Gerhart Avenue | City or Station: | Los Angeles |

| Bureau/Station/Facility: | Central Patrol / East Los Angeles | Admin. Investigation: ○ YES ◉ NO |

| Type of Force: | Control Holds: Control Techniques |

| Incident Category: ◉ 1 ○ 2 ○ 3 | Deputy Injury: ○ YES ◉ NO | Suspect Injury ◉ YES ○ NO |

| ☒ Call | ☐ Observation | ☐ Detail | ☐ Foot Pursuit | ☐ Vehicle Pursuit |

| IAB Notified: ○ YES ◉ NO  Person Notified: | Emp: | IAB Roll Out ○ YES ◉ NO |

### Involved Employee

**E 1**

| Employee # 547634 | Last Name: Leon | First Name: Miguel | Middle I. E | Rank DSG |
| Sex: ◉ M ○ F | Race: H | Height: 510 | Weight: 185 | Age: 35 | Shift: ○ EM ○ Day ◉ PM | ◉ Regular Shift ○ OT Shift ○ Off Duty |
| Unit of Assignment: East Los Angeles | Work Assignment (Unit #, Module, etc.): 24B |
| Individual Force Used: Control Holds: Control Techniques | ○ Directed ○ Rescue ○ Medical Assist | Individual Category ◉ 1 ○ 2 ○ 3 |
| ☐ Injured ☐ Treated ☐ Admitted  Facility: | Coroner Case # |

**E 2**

| Employee # 552827 | Last Name: Trejo | First Name: Sergio | Middle I. | Rank DSG |
| Sex: ◉ M ○ F | Race: H | Height: 510 | Weight: 200 | Age: 31 | Shift: ○ EM ○ Day ◉ PM | ◉ Regular Shift ○ OT Shift ○ Off Duty |
| Unit of Assignment: East Los Angeles | Work Assignment (Unit #, Module, etc.): 24B |
| Individual Force Used: Control Holds: Control Techniques | ○ Directed ○ Rescue ○ Medical Assist | Individual Category ◉ 1 ○ 2 ○ 3 |
| ☐ Injured ☐ Treated ☐ Admitted  Facility: | Coroner Case # |

**E**

| Employee # | Last Name: | First Name: | Middle I. | Rank |
| Sex: ○ M ○ F | Race: | Height: | Weight: | Age: | Shift: ○ EM ○ Day ○ PM | ○ Regular Shift ○ OT Shift ○ Off Duty |
| Unit of Assignment: | Work Assignment (Unit #, Module, etc.): |
| Individual Force Used: | ○ Directed ○ Rescue ○ Medical Assist | Individual Category ○ 1 ○ 2 ○ 3 |
| ☐ Injured ☐ Treated ☐ Admitted  Facility: | Coroner Case # |

### On Duty Supervisor

☐ Additional Involved Employees

| Emp. # 410544 | Last Name: Kluth | First Name: David | Middle I. A | Rank SGT | Present YES ○ NO ◉ | Witness to Incident YES ○ NO ◉ |

### Supervisor Completing Investigation

| Emp. # 410544 | Last Name: Kluth | First Name: David | Middle I. A | Rank SGT | Present YES ○ NO ◉ | Witness to Incident YES ○ NO ◉ |

### Watch Commander / Supervising Lieutenant

| Emp. # 443556 | Last Name: Reynaga | First Name: Hugo | Middle I. H | Rank LT |

Lt. Reynaga #443556

Watch Commander / Supervising Lieutenant's Signature: _____  Date: 12/10/19

Copy Provided to Employee by: _____  Emp #:

Alex Mejia

Unit Commander (Print Name)  Unit Commander's Signature: _____  Emp #: 253129  Date: 12/18/19

DISCOVERY Use Only
FO# 259 6821

☐ PPI REVIEW COMPLETED

Original: Discovery Unit
Copy: Unit Commander

SH-R-438P (Rev. 01/13)

Case 2:20-cv-01691-JFW-AFM   Document 80-1   Filed 08/23/21   Page 3 of 26   Page ID #:908

**Supervisor's Report on Use of Force**
**SUSPECT INFORMATION**

9 1 9 - 1 5 1 7 1 - 0 2 8 5 - 3 9 9

Page 2 of 12

| Suspect Information | | | |
|---|---|---|---|
| **S 1** Last Name: Rea | First Name: Jaylene | Middle Name: Brianna | Armed? Select: Not Armed |
| AKA Last Name: | First Name | | Middle Name |

Sex: ○ Male ◉ Female | Race: H | Age: 21 | Height: 411 | Weight: 130 | D.O.B: ▮▮▮ | Phone #1: ○ H ○ W ○ C | Phone #2: ○ H ○ W ○ C

Street Address: ▮▮▮ | City: ▮▮▮ | State & Zip Code:

Booking #: 5786881 | Primary Charge Code: 135 PC | Secondary Charge Code: | ☐ Criminal History

Treated on Scene? ○ YES ◉ NO  Name: | Unit: | Phone #:

Hospital Admission? ☐ Rec'd Treatment At: East LA Doctor's | Coroner Case #: | Mental History ☐ User's guide provides direction on this entry

By: Courtney Scott | Address: 4060 Whittier Bl, LA  CA  90023 | Phone #: 323 268 5514

Under Influence? ○ YES ◉ NO  Substance: | 5150 a factor in force? ○ YES ◉ NO User's guide provides direction on this entry

| Suspect Interview | | | |
|---|---|---|---|
| Date: 103119 | Time: 0122 | ☐ Audiotape: ☒ Videotape: ☐ Photos of Injuries: | ☐ ADMITS HEARING ANNOUNCEMENTS |

| Suspect Information | | | |
|---|---|---|---|
| **S** Last Name: | First Name | Middle Name | Armed? Select |
| AKA Last Name: | First Name | | Middle Name |

Sex: ○ Male ○ Female | Race: | Age: | Height: | D.O.B: | Weight: | Phone #1: ○ H ○ W ○ C | Phone #2: ○ H ○ W ○ C

Street Address: | City: | State & Zip Code:

Booking #: | Primary Charge Code: | Secondary Charge Code: | ☐ Criminal History

Treated on Scene? ○ YES ○ NO  By: | Unit: | Phone #:

Hospital Admission? ☐ Rec'd Treatment At: | Coroner Case #: | Mental History ☐ User's guide provides direction on this entry

By: | Address: | Phone #:

Under Influence? ○ YES ○ NO  Substance: | 5150 a factor in force? ○ YES ○ NO User's guide provides direction on this entry

| Suspect Interview | | | |
|---|---|---|---|
| Date: | Time: | ☐ Audiotape: ☐ Videotape: ☐ Photos of Injuries: | ☐ ADMITS HEARING ANNOUNCEMENTS |

| Suspect Information | | | |
|---|---|---|---|
| **S** Last Name: | First Name | Middle Name | Armed? Select |
| AKA Last Name: | First Name | | Middle Name |

Sex: ○ Male ○ Female | Race: | Age: | Height: | D.O.B: | Weight: | Phone #1: ○ H ○ W ○ C | Phone #2: ○ H ○ W ○ C

Street Address: | City: | State & Zip Code:

Booking #: | Primary Charge Code: | Secondary Charge Code: | ☐ Criminal History

Treated on Scene? ○ YES ○ NO  By: | Unit: | Phone #:

Hospital Admission? ☐ Rec'd Treatment At: | Coroner Case #: | Mental History ☐ User's guide provides direction on this entry

By: | Address: | Phone #:

Under Inluence? ○ YES ○ NO  Substance: | 5150 a factor in force? ○ YES ○ NO User's guide provides direction on this entry

| Suspect Interview | | | |
|---|---|---|---|
| Date: | Time: | ☐ Audiotape: ☐ Videotape: ☐ Photos of Injuries: | ☐ ADMITS HEARING ANNOUNCEMENTS |

SH-R-438P (Rev. 01/13) | ☐ Additional Suspects Involved

## Supervisor's Report on Use of Force

| 9 | 1 | 9 | - | 1 | 5 | 1 | 7 | 1 | - | 0 | 2 | 8 | 5 | - | 3 | 9 | 9 |

**Page 3  of 12**

### Method

(AW) Arwen
(BC) Baton: (Control)
(BI) Baton: (Impact)
(BF) Bodily Fluids
(CN) Canine
(CR) Carotid Restraint
(CH) Choke Hold
(CT) Control Holds: (Control Techniques)
(TT) Control Holds: (Team Takedown)
(TD) Control Holds: (Takedown)
(CE) Chemical
(OC) Chemical Agents (OC Spray)
(TG) Chemical Agents (Tear Gas)
(EX) Explosives

(FH) Firearm (Handgun)
(FR) Firearm (Rifle)
(FS) Firearm (Shotgun)
(FO) Firearm (Other)
(FB) Flashbang
(FL) Flashlight
(OE) Other Weapon: Edged
(OV) Other Weapon: Vehicle
(OB) Other Weapon: Blunt Object
(OO) Other Weapon: Other
(PK) Personal Weapon: Feet/Leg: (Kick)
(PS) Personal Weapon: Feet/Leg: (Sweep)
(PH) Personal Weapon (Hand/Arm)
(PP) Personal Weapon (Push)

(PO) Personal Weapon (Other)
(RS) Resistance
(RO) Restraint Device (Other)
(RH) Restraint Device (Handcuffs)
(HB) Restraint Device: Hobble (Legs Only)
(TP) Restraint Device: Hobble (TARP)
(RE) Restraint Device: REACT Belt
(SP) Sap
(SH) Shield
(IR) Less Lethal Impact Round (other)
(SB) Sting Ball
(ST) Stun Bag
(TR) Taser
(UC) Uncooperative
(HR) High Risk

### Type of Injury

(AB) Abrasion
(BR) Bruise
(BU) Burn
(CP) Complaint of Pain
(CO) Concussion
(DH) Death
(DI) Dislocation

(DB) Dog Bite
(FR) Fractures
(GS) Gunshot
(HB) Human Bite
(LC) Lacerations
(ND) Nerve Damage
(OD) Organ Damage

(PA) Paralysis
(PW) Puncture Wound
(SD) Soft Tissue Damage
(ST) Sprain/Twists
(UN) Unconscious
(RM) Refused Med Treatment
(NN) NONE

### Body Part Involved

(AD) Abdomen
(AK) Ankle
(AR) Arm
(BK) Back
(BT) Buttocks
(CH) Chest
(EL) Elbow

(FA) Face
(FE) Feet
(FI) Fingers
(GE) Genitals
(GR) Groin
(HD) Hands
(HE) Head

(HI) Hip
(IN) Internal
(KN) Knees
(LE) Leg
(NK) Neck
(NO) Nose
(SH) Shoulder
(WR) Wrist

| FORCE USED BY | | FORCE USED AGAINST | | Method (Code) | Type of Injury (Code) | Body Part (Code) |
|---|---|---|---|---|---|---|
| Name | E# or S# | Name | E# or S# | | | |
| REA | S1 | LEON | E1 | UC | NN | NN |
| REA | S1 | TREJO | E2 | UC | NN | NN |
| | | | | | | |
| LEON | E1 | REA | S1 | CT | CP | WR |
| TREJO | E2 | REA | S1 | CT | CP | WR |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

SH-R-438P (Rev. 01/13)

## Supervisor's Report on Use of Force

Page 4 of 12

URN # 919-15171-0285-399

| INCIDENT OVERVIEW |
|---|

1. SCENE DESCRIPTION/LEGAL STANDING

☑ Call    ☐ Observation    ☐ Other:

East Los Angeles Station deputies received a disturbance call which stated numerous people were gathered at a memorial site at 300 South Gerhart Avenue, Los Angeles, and they were causing a traffic hazard.

2. THREAT, PERCEIVED THREAT, OR SITUATION LEADING TO THE USE OF FORCE (Check all that apply)
   ☐ Medical order
   ☐ Court order
   ☑ Passive resistance - refusal to comply
   ☐ Active resistance (verbal threats/physical resistance)
   ☐ Assaultive behavior toward law enforcement or custody personnel
   ☐ Assaultive behavior with threat of serious bodily injury/death toward law enforcement or custody personnel
   ☐ Assaultive behavior toward others
   ☐ Assaultive behavior with threat of serious bodily injury/death toward others
   ☐ High risk
   ☐ Other:

3. Describe the threat, perceived threat, or situation as reported by personnel:

Deputy Trejo and Deputy Leon were in the process of detaining a male for smoking a marijuana in public view when they saw the male hand the marijuana cigarette to the suspect.  The suspect took the marijuana cigarette, concealed it in the front pocket of her sweat shirt and began to briskly walk away from the male, Deputy Trejo and Deputy Leon.  Both deputies gave the suspect several verbal commands for her to stop and relinquish the marijuana cigarette.  The suspect failed to comply with their orders and continued to walk away in an apparent attempt to conceal or destroy the marijuana cigarette.  Deputy Trejo and Deputy Leon each applied a firm grip to the suspect's wrists to keep her from leaving and ensure the preservation of evidence.

4. RESPONSE BY PERSONNEL TO SUSPECT'S ACTIONS (Check all that apply)
   ☐ Chemical Agent                 ☐ Impact Weapon (Baton/Sap)
   ☐ Pepperball                     ☐ Stunbag/Arwen/40MM
   ☐ Personal Weapon(s)             ☐ Carotid Restraint
   ☐ CEW/Taser Darts                ☐ CEW/Taser Drive Stun
   ☑ Control Techniques             ☐ K-9
   ☐ Takedown/Team Takedown         ☐ Other:

5. Describe the type and amount of force applied and by whom:

Deputy Trejo:  Control Holds:  Control Techniques
Deputy Leon:  Control Holds:  Control Techniques

6. Was force used on a suspect in mechanical restraints? (If yes, check appropriate type.)
   ☑ No                   ☐ Waist Chain
   ☐ Handcuffs            ☐ TARP
   ☐ Hobble Restraint     ☐ Wheelchair/Gurney
   ☐ Safety Chair         ☐ Other:
   ☐ Fixed Object

| VIDEOS, PHOTOS, & OTHER RELEVANT MATERIALS |
|---|

(SH-R-438PS) 09/2018                                                      Supervisor's Report on Use of Force

## Supervisor's Report on Use of Force

Page  5  of 12

### URN #  919-15171-0285-399

<u>VIDEO FOOTAGE</u>

7. Was the incident captured on video?
- ☑ No
- ☐ Yes. If so, by:
  - ☐ Body Cam (Department)  ☐ Body Cam (Personal)  ☐ Social Media  ☐ Surveillance
  - ☐ Bystander  ☐ Department Handheld  ☐ Dash Cam  ☐ Media  ☐ Other:

8. Video obtained?
- ☐ Yes (if yes, where stored?)
- ☐ No (If no, explain)
- ☑ N/A

<u>PHOTOGRAPHY</u>

9. Was the incident captured via photographs?
- ☑ No
- ☐ Yes. If so, by:
  - ☐ Body Cam (Department)  ☐ Body Cam (Personal)  ☐ Social Media  ☐ Surveillance
  - ☐ Bystander  ☐ Department Handheld  ☐ Dash Cam  ☐ Media  ☐ Other:

10. Photos obtained?
- ☐ Yes (If yes, where stored?)
- ☐ No (If no, explain)
- ☑ N/A

11. Was the scene captured on video or photographs by investigating supervisor?
- ☑ Yes     ☑ Video     ☐ Photo
- ☐ No (If no, explain)

<u>OTHER RELEVANT MATERIAL</u>

12. Were any other relevant materials/evidence identified?
- ☑ Yes (If yes, describe)
- ☐ No

A marijuana cigarette was recovered from the suspect's pocket.

13. Was it collected?
- ☑ Yes
- ☐ No (If no, explain)
- ☐ N/A

**FORCE DE-ESCALATION, MITIGATION and PREVENTION EFFORTS**

(SH-R-438PS) 09/2018

Supervisor's Report on Use of Force

Defendants' Summary Judgment Exhibit No. 7
Page 11

## Supervisor's Report on Use of Force

**Page 6 of 12**

**URN # 919-15171-0285-399**

14. NON-FORCE/PRE-FORCE RESPONSE BY PERSONNEL TO SUSPECT ACTIONS

☐ Suspect detained at gunpoint    ☐ Suspect requested    ☐ Baton unholstered
☐ CEW/Taser warning advisement    ☐ Supervisor present    ☐ OC Spray unholstered
☐ CEW/Taser "Arc"    ☐ Back-up requested
☐ Verbal persuasion    ☐ Other:
☑ Verbal commands

15. De-escalation Efforts (Describe):

The suspect was given numerous verbal commands to stop and relinquish the marijuana cigarette but she refused to comply with the deputies' orders.  Once the deputies applied firm grips on the suspect's wrists, placed her hands behind her back, and walked her to their patrol vehicle, the suspect became cooperative.  The deputies released their firm grip of the suspect's wrists and placed her in the back seat of the patrol vehicle.

16. Was there a reassessment during the application of force to determine if the type and amount of force was having the desired effect on the suspect's actions?
☑ Yes
☐ No
☐ N/A

17. Did personnel de-escalate force as resistance decreased?
☑ Yes
☐ No
☐ N/A

After the deputies walked the suspect to their patrol vehicle, the deputies released their control of the suspect's arms and she sat in the rear seat of the patrol vehicle without further incident.

### REPORTED USE OF FORCE BY INVOLVED and WITNESS EMPLOYEE(S)

18. Were force reporting procedures adhered to?
☑ Yes
☐ No (If no, explain)

19. Did all involved and witnessing employees complete a report, or memo?
☑ Yes
☐ N/A
☐ No (If no, explain)

Deputy Anthony J. Pacheco #506557 and Deputy Michael Martinez #550248 (24/P) were at the location during the incident and they were detaining the male who gave the marijuana cigarette to the suspect.  Their focus was on detaining the male and they did not see Deputy Trejo and Deputy Leon detaining the suspect.

20. Was the video admonishment given prior to viewing any force incident video?
☐ Yes
☑ N/A - video not reviewed
☐ No (If no, explain)

(SH-R-438PS) 09/2018         Supervisor's Report on Use of Force

## Supervisor's Report on Use of Force
### URN #  919-15171-0285-399

Page  7  of 12

21. Did all involved employees and witness employees complete a written report prior to viewing any video?
☐ Yes
☐ No (If no, explain)
☑ N/A

22. Were there any inconsistencies, conflicts, or issues in documentation (including video) requiring clarification?
☑ No
☐ Yes (If yes, explain)

23. Did the employee reports adequately and accurately articulate the force used and the reason(s) for using force?
☑ Yes
☐ No (If no, explain)

### NOTIFICATION PROCEDURES

24. Were required notifications made to IAB (e.g. met criteria, timely, etc.)?
☐ Yes
☑ N/A
☐ No (If no, explain)

25. Was the IAB Mandatory Notification Form submitted?
☐ Yes
☑ N/A
☐ No (If no, explain)

### WITNESS INTERVIEW(S)

26. Did the investigating supervisor respond to the scene?
☑ Yes
☐ No (If no, explain)

27. Did the supervisor canvass for witnesses?
☑ Yes
☐ N/A
☐ No (If no, explain)
The suspect's mother and other individuals at the location were confrontational, uncooperative, and were yelling profanities at deputy personnel.  Numerous times, the suspect's mother had to physically restrain others from running toward the deputies' position.

(SH-R-438PS) 09/2018

Supervisor's Report on Use of Force

Defendants' Summary Judgment Exhibit No. 7
Page 13

## Supervisor's Report on Use of Force

Page  8  of 12

URN #  919-15171-0285-399

28. <u>Statements obtained:</u>

Due to the confrontational demeanor described in question #27, no witness statements were obtained.

### POST FORCE SUSPECT INTERVIEW(S)

29. Were personnel involved in the use of force present during the suspect interview?

☑ No
☐ Yes (If yes, explain)

30. Was there a complaint regarding the force used?

☐ No
☑ Yes

    W/C Notified:  Lieutenant Reynaga

    SCR #  252714

The complaint regarding the force used in this incident was reported on November 20, 2019, and came in by way of email, as a letter addressed to the Los Angeles Board of Supervisors and District Attorney Jackie Lacey, drafted by the ACLU of Southern California.

31. Was the suspect interviewed by the supervising sergeant?

☒ No
☐ Yes (If yes, write statement below)

### MEDICAL REVIEW

32. Did the investigating supervisor examine the suspect(s) for injuries?

☑ Yes
☐ N/A
☐ No (If no, explain)

33. Did the suspect(s) complain of pain?

☑ Yes
☐ N/A
☐ No

The suspect complained of pain to her left wrist.

34. Was the suspect(s) injured as a result of the use of force?

☑ No
☐ Yes (If yes, describe)

The suspect had slight redness to her left wrist.  The redness was circular and approximately 3/4" in diameter.  The redness was consistent with having been caused from being restrained in handcuffs.  The suspect did not complain of any specific injury nor could she identify any injury.  The suspect only complained of pain to her left wrist.

35. Did the suspect(s) allege any additional injuries?

☑ No
☐ Yes (Describe the injury and indicate whether or not documentation/medical evaluation supports the description of the injury.)

(SH-R-438PS) 09/2018                                                                                                    Supervisor's Report on Use of Force

Case 2:20-cv-01691-JFW-AFM   Document 80-1   Filed 08/23/21   Page 10 of 26   Page ID #:915

### Supervisor's Report on Use of Force
**URN #  919-15171-0285-399**

Page  9  of 12

36. Were the suspect(s) injuries, or alleged injuries, photographed?
☐ Yes
☐ N/A
☑ No (If no, explain)

 The suspect was captured on video during the Watch Commander's interview in the East Los Angeles Station's jail where she complained of pain to her left wrist.

37. Did the suspect(s) receive a medical evaluation following the incident?
☑ Yes
☐ No (If no, explain)

38. Was medical treatment rendered following the evaluation?
☐ Yes
☐ N/A
☑ No (If no, explain)
 The suspect was examined and evaluated for her complaint of pain to her left wrist, then given an "OK to book" by the medical staff at East LA Doctor's hospital.

39. If the suspect(s) was transported to a medical facility or required further medical evaluation/treatment, was a diagnosis received?
☑ Yes
☐ N/A
☐ No (If no, explain)

40. Was the suspect admitted to the hospital?
☐ Yes
☑ No
☐ Non-force related admission

41. Were all of the suspect's injuries or alleged injuries documented by medical personnel during the medical evaluation?
☑ Yes
☐ N/A
☐ No (If no, explain)

42. After consulting with medical personnel, did the injuries (including discomfort from chemical agents) sustained by the suspect(s) appear to be consistent with the reported force?
☑ Yes
☐ N/A
☐ No (If no, explain)

(SH-R-438PS) 09/2018

Supervisor's Report on Use of Force

Defendants' Summary Judgment Exhibit No. 7
Page 15

## Supervisor's Report on Use of Force

Page 10 of 12

URN # 919-15171-0285-399

43. Did the suspect(s) have any known or self-identified pre-existing injuries or conditions?
☑ No
☐ Unknown
☐ Yes (If yes, describe and indicate if documentation exist)

44. Were the injuries to involved employees consistent with the reported force?
☐ Yes
☑ N/A
☐ No (If no, explain)

45. If any injuries to the suspect(s) were not believed to be caused by the force, did the force investigation identify the possible or probable cause (accidental/self-inflicted)?
☐ No - unable to determine cause
☑ N/A
☐ Yes (If yes, explain and indicate if documentation exists)

46. Was there an application of the TARP?
☑ No
☐ Yes (If yes, answer 46a and 46b)
46a. Start and end times of the TARP application:

46b. Deputy personnel assigned to remain in close audible and visual observation of the TARP'd suspect and to continuously monitor respiratory status and level of consciousness (Name/Emp. #):

47. Were there any head strikes or head injuries to the suspect(s) during the application of force?
☑ No
☐ Unintentional
☐ Impact weapons
☐ Personal weapons
☐ Contact with hard objects
☐ Intentional
☐ Impact weapons
☐ Personal weapons
☐ Contact with hard objects

**TRAINING / TACTICS / EQUIPMENT REVIEW**

<u>TRAINING REVIEW</u>

(SH-R-438PS) 09/2018

Supervisor's Report on Use of Force

## Supervisor's Report on Use of Force
### URN #  919-15171-0285-399

Page 11 of 12

47. List any training and/or tactical concerns, implications, or recommendations.

☑ Investigating Supervisor     ☐ Training Supervisor

Once the deputies stopped the suspect and gained control of the suspect's arms, it would have been more tactically sound to have placed her in handcuffs and then detaine   her in the patrol vehicle pending a search by a female deputy.  This was discussed with Deputy Leon and Deputy Trejo, they were both receptive.

<u>EQUIPMENT ISSUES IDENTIFIED</u>
(Taser, Safety Chair, Hobble, Special Weapons, etc.)

48. If weapons or other equipment were used, were they used properly and did they function as designed?
☐ Yes
☑ N/A
☐ No (If no, explain)

49. Was the equipment approved by the Department?
☐ Yes
☑ N/A
☐ No (If no, explain)

50. Were personnel trained and qualified to use the equipment?
☐ Yes
☑ N/A
☐ No (If no, explain)

51. List any equipment recommendations and actions taken.
None.

**AFTER ACTION INFORMATION**

52. Was an incident debriefing conducted?
☑ Yes (Indicate what was discussed, recommendations made, and/or actions taken if any)
☐ No (If no, explain)
During the incident debriefing, we discussed handcuffing the suspect immediately after gaining control of her wrists and detaining her in the patrol vehicle, pending the arrival of a female deputy available to search her person for the concealed evidence.  The deputies were receptive.

53. Corrective action recommended?
☑ No
☐ Yes (If yes, explain)

54. Description of materials/evidence to be considered when determining if incident was objectively reasonable and within policy:
Statements from the suspect and the deputies were used to determine that the force was objectively reasonable

(SH-R-438PS) 09/2018

Supervisor's Report on Use of Force

**Supervisor's Report on Use of Force**          Page 12 of 12

URN #  919-15171-0285-399

and within policy.

55. <u>OTHER TOPICS / DISCUSSION ITEMS</u>

| CASE STATUS |
| --- |

56. Was a case submitted to the District Attorney for filing consideration?

☑ Yes

☐ No (If no, explain)

The suspect was booked at East Los Angeles Station and later cited for 135 PC and released.

| CASE DISPOSITION |
| --- |

☐ N/A

☑ DA Reject (Reason):  Insufficient Evidence

☐ Case Filed:

  Case #                           Date Filed:

  Charge(s):


  Case Outcome:

  Or

  Next Court Date:

(SH-R-438PS) 09/2018                                                          Supervisor's Report on Use of Force

## *Watch Commander's*
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs     Station:  East Los Angeles

URN #: 919-15171-0285-399

During my review of this incident, *I have read all written reports and viewed all available video and audio recordings (including facility CCTV, handheld camera footage of the incident, interviews, and photographs) that document any aspect of this force incident.  The scope of my review also included the following:*

1. Was the initial contact within the scope of the Department member's duties and responsibilities?  (Consider legal standing, Department member's assignment, activity preceding incident, etc.)
   - ☑ Yes
   - ☐ No (If no, explain)

2. Was there a perceived or actual threat prior to, or at the time, force was used?
   - ☑ Yes (explain)
   - ☐ No (explain)
   - ☐ N/A (explain)

   The suspect was not complying with verbal commands from the deputies.  The deputies had ordered her to stop walking away from them and to give them a marijuana cigarette she had concealed in her sweatshirt.  Once deputies contacted the suspect, her uncooperative behavior compelled them to apply a firm grip, on her wrists, in order to get her to comply with their verbal commands and enable them to recover the marijuana cigarette, before she discarded or destroyed it.

3. Were there efforts to de-escalate the situation?
   - ☑ Yes
   - ☐ No (If no, explain)

4. Did a supervisor direct force?
   - ☐ Yes (If yes, answer 4a & 4b)
   - ☑ No

   4a. If the force was directed, was the supervisor's decision to direct force appropriate and reasonable for the situation?
   - ☐ Yes
   - ☑ N/A
   - ☐ No (If no, explain)

   4b. Did the supervisor who directed force also conduct the Force Investigation?
   - ☐ Yes (If yes, explain)
   - ☑ No
   
   N/A

5. Was a supervisor immediately notified of the use of force as required by Department policy?
   - ☑ Yes
   - ☐ No (If no, explain)

(SH-R-438PW) 09/2018                                                    Watch Commander's Use of Force Review and Incident Analysis

Defendants' Summary Judgment Exhibit No. 7
Page 19

## _Watch Commander's_
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs     Station:  East Los Angeles
URN #: 919-15171-0285-399

6. Did a supervisor use force?
   ☑ No
   ☐ Yes (If yes, answer 6a, 6b, and 6c)

   6a. Was the supervisor's direct involvement appropriate?
   ☐ Yes (explain)
   ☑ No (explain)
   N/A

   6b. Was the supervisor's use of force instrumental in ending the force?
   ☐ Yes (explain)
   ☐ No (explain)

   6c. Did the supervisor who used force also conduct the Force Investigation?
   ☐ No
   ☐ Yes (If yes, explain)

7. Were there any discrepancies identified in the reporting or documentation that were _not_ addressed during the Supervisor's Report on Use of Force (SH-R-438PS)?
   ☑ No
   ☐ Yes (If yes, explain)

8. Were there any material omissions or inaccuracies in the Force Reports (i.e., undisclosed injuries, unmentioned witnesses, or other undisclosed actions by personnel)?
   ☑ No
   ☐ Yes (If yes, explain)

9. Did the supervisor identify and/or collect all evidence?
   ☐ Yes
   ☑ N/A
   ☐ No (If no, explain)

10. Were all known witnesses identified?
   ☐ Yes
   ☑ No (If no, explain)
   See question 12.

Defendants' Summary Judgment Exhibit No. 7
Page 20

### *Watch Commander's*
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs      Station:  East Los Angeles
URN #: 919-15171-0285-399

11. Were all identified witnesses interviewed and their statements documented in the Supervisor's Report on
Use of Force (SH-R-438PS)?
☐ Yes
☑ No (If no, explain)
No witnesses were identified at the scene.

12. Were initial statements obtained and documented by the investigating sergeant in the Supervisor's Report on
Use of Force (SH-R-438PS)?
☐ Yes
☑ No (If no, explain)
Potential witnesses which were at the scene when the investigating sergeant arrived, were hostile
toward deputy sheriff personnel and did not wish to make any statements to the investigating sergeant
at the time of the incident.

13. Was a watch commander interview of the suspect(s) conducted?
☐ No (explain)
☑ Yes (statement below)
On October 31, 2019, Sergeant Kluth video recorded my interview with Suspect Rea, inside the East
Los Angeles Station jail.  The following is a synopsis of my interview with Suspect Rea:

The suspect stated she had been with family and friends at the memorial site of her deceased brother,
at 300 Gerhart Avenue, approximately an hour before the incident occurred.  She said deputies had
stopped by and told them to move their vehicles, which were illegally parked on the street.  When
deputies returned, the suspect observed the deputies shine a spotlight on her group.  Deputies told her
cousin to put a marijuana cigarette.  As deputies approached her and her cousin, the suspect said
her cousin put out the marijuana cigarette and the suspect took the marijuana cigarette from her cousin
and placed it in the pocket of her sweatshirt.  The suspect said she heard a deputy say, "No, I want
that," referring to the marijuana cigarette.  The suspect heard a second deputy say, "I'll get that," as he
grabbed her wrists and pulled them behind her back and in an upward motion, while walking her to a
patrol vehicle.  The suspect said the deputy never gave her any verbal commands prior to grabbing her
wrists.  She added, a second deputy told her, "Stop resisting," when she was not resisting.  Once at the
patrol vehicle, the deputy removed the marijuana cigarette from her pocket then placed her in the
backseat of the patrol vehicle.  The suspect said it took the deputy a total of approximately twenty-five
seconds to grab her wrists and walk her to the patrol vehicle, before she was placed in the backseat.  A
female deputy then arrived on scene, patted down the suspect, handcuffed her, and placed her back
into the backseat of the patrol vehicle.

The suspect stated a deputy contacted her and asked her what happened.  The suspect explained to
the deputy what had just occurred and complained of pain to her left wrist from the deputy using
excessive force.  The suspect stated two other deputies arrived on scene, placed her seatbelt on, and
when she asked where they were taking her, the deputies would not tell her where they were taking her
and just replied, "You'll see when you get there."  The deputies ultimately transported the suspect to the
hospital to be treated for her complaint of pain to her left wrist then to the station for booking.

The suspect complained of pain to her left wrist and stated she had visible finger marks on her wrist, at
the time of the incident.  There were no visible sign of finger marks on the suspect's left wrist at the time

Defendants' Summary Judgment Exhibit No. 7
Page 21

## _Watch Commander's_
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs     Station:  East Los Angeles
URN #: 919-15171-0285-399

of the video recorded interview.  The suspect had slight redness to the inside of her left wrist, which she stated was not a result of the handcuffs.

The suspect stated she had ingested one glass of beer at approximately 1800 hours on the night of the incident, prior to her contact with deputies.  The suspect said she had not ingested any narcotics or prescribed medication prior to the incident with deputies and stated she did not have a history of mental illness.

14. Were the suspect and witness statements consistent with the reported use of force?
    ☐ Yes
    ☑ No (If no, explain)
    The deputies stated they gave the suspect verbal commands to stop and surrender a marijuana cigarette.  They said she refused as she walked away from them and became uncooperative.  The suspect did not mention hearing any verbal commands from the deputies prior to being detained by them.  This statement appears to be self-serving and goes toward her allegation of the deputy using excessive force against her, resulting in pain to her left wrist.

Suspect Rea alleged one deputy grabbed her wrists and pulled them in an upward motion and walked her to the patrol vehicle.  She said the same deputy had twisted her left wrist, in particular, and held it at an awkward angle.  The deputies stated they both had controlled the suspect's wrists and applied no force greater than a firm grip.  The suspect was resolute in her recollection of events and firmly maintained that only one deputy had grabbed her wrists.

While reviewing the suspect's statement, I found that her description of events would have been difficult, if not impossible, for one deputy to accomplish.  When she described the awkward grip and angle alleged to have been used on her left arm/wrist she did not describe what happened to her right arm and wrist.  Based on her demonstration of the act, either the described deputy would have had to pull her right arm completely across her back or a second person would have had to be holding the right arm in place.  It would have been very difficult for one person to accomplish this maneuver without causing some discomfort or injury to the suspect's right arm.

The suspect also said this deputy put her cellular phone and some miscellaneous papers on top of the patrol car.  She said these items had been in her right hand.  She said the deputy also recovered the marijuana cigarette from her sweatshirt.  It would appear to be impossible for one deputy to control both of her wrists and manage to recover items from her right hand and her sweatshirt without relinquishing control of one of her wrists.  Conversely, it would appear perfectly reasonable for this to occur, as the deputies described, by each holding a wrist and having one hand free to secure property and evidence.

Based on the fact that the suspect did not complain of pain to her right arm nor describe that her arm had been forced across her back when the alleged wrist lock was applied, coupled with the next to impossible feat of securing all of her property and evidence while maintaining control of her wrists, I found that her recollection of events was highly questionable and unlikely to have occurred. I recommend no further action.

Defendants' Summary Judgment Exhibit No. 7
Page 22

### *Watch Commander's*
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs     Station:  East Los Angeles
URN #: 919-15171-0285-399

15. Was there a complaint regarding the force used?
☑ Yes, SCR #   252714
☐ No
A letter drafted by the ACLU was emailed to the Los Angeles Board of Supervisors and District Attorney
Jackie Lacey, indicating the complaint regarding the force used in this incident was excessive.  The
Department was forwarded the letter at which time a complaint for this incident was generated.

16. Were there any other allegations of misconduct?
☑ No
☐ Yes (Explain and indicate if further investigation is required)
     SCR #

17. Were there injuries to Department members?
☑ No
☐ Yes (If yes, answer 17a and 17b)

     17a. Was medical attention provided to Department member(s)?
     ☐ Yes
     ☐ No (If no, explain)

     17b. Was the appropriate paperwork completed for employees who were injured during the use of force?
     ☐ Yes
     ☐ No (If no, explain)

18. Were there injuries to the suspect(s)?
☑ No
☐ Yes (If yes, answer 18a and 18b)
     18a. Was medical attention provided to the suspect(s)?
     ☐ Yes
     ☑ No (If no, explain)
     N/A

     18b. After reviewing the medical documentation, is it the doctor's opinion that the injuries sustained are
          consistent with the force reported?
     ☐ Yes
     ☐ Unable to determine
     ☑ No (If no, explain)
     N/A

Defendants' Summary Judgment Exhibit No. 7
Page 23

### _Watch Commander's_
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs     Station:  East Los Angeles

URN #: 919-15171-0285-399

19. Were the force options or weapons effective during the incident?
☑ Yes
☐ No (If no, explain)

20. Could officer safety, tactical communication, or de-escalation techniques have been improved?
☐ No
☑ Yes (If yes, explain)
The deputies could have improved their officer safety by handcuffing the suspect immediately after they were able to control her hands.

21. If there was an application of the TARP, was there documentation of the following:
- the start and end time for its application;
- the EMS agency that responded ;
- the suspect's body position while transporting;
- deputy personnel assigned to continuously monitor the suspect's respiratory status and consciousness
☑ N/A
☐ Yes
☐ No (If no, explain)

22. Was video and/or audio recording technology used in accordance with Department policy?
☐ Yes
☑ N/A
☐ No (If no, explain)

22a. Was the video and/or audio reviewed by the Watch Commander?
☑ N/A
☐ Yes
☐ No (If no, explain)

23. Does the Supervisor's Report on Use of Force Report (SH-R-438PS) identify any issues related to policy, training, equipment or other risk factors that require further action?
☑ No
☐ Yes (If yes, explain)

24. Are there any additional policy, training, equipment or other risk factors _not_ identified in the Supervisor's Report on Use of Force Report (SH-R-438PS)?
☑ No
☐ Yes (If yes, explain)

Defendants' Summary Judgment Exhibit No. 7
Page 24

### *Watch Commander's*
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs     Station: East Los Angeles
URN #: 919-15171-0285-399

25. Assess Department member's actions throughout the force incident:

    a. Were Department member's actions *prior to* the use of force in compliance with policy, procedures and training?

    ☑ Yes
    ☐ No (If no, explain)

    b. Were Department member's actions *during* the use of force in compliance with policy, procedures and training?

    ☑ Yes
    ☐ No (If no, explain)

    c. Were Department member's actions *following* the use of force in compliance with policy, procedures and training?

    ☑ Yes
    ☐ No (If no, explain)

## DETERMINATION BY REVIEWER

The Department will determine the reasonableness of the use of force by evaluating each use of force event in light of the circumstances known to the involved deputy at the time of the incident.  The following are examples of factors that may be considered in determining if the force that was used in a given situation was objectively reasonable:
- Whether the suspect poses an immediate threat to the safety of the deputy or public;
- The severity of the crime;
- Whether the suspect is actively resisting arrest or attempting to evade arrest;
- Whether the suspect has been given a reasonable opportunity to calm down, moderate aggressive and irrational behaviors and comply with directives.
- The availability of other options to de-escalate the situation and their possible effectiveness.
- The risk and foreseeable consequences of not immediately apprehending the suspect;
- Factors such as age, size, relative strength, skill level, etc.;
- Prior contacts with the suspect(s) and/or knowledge of a suspect's propensity for violence;
- The level of threat or resistance presented by the suspect;
- Whether there is information suggesting the suspect's intention or objective;
- The suspect's verbal and non-verbal threat cues;
- Whether the suspect has an audience or supporters;
- The proximity, possession or access of weapons to the suspect;
- The number of suspects;
- The deputy's training, experience, and fitness;
- The suspect's training, experience, and fitness;

(SH-R-438PW) 09/2018                                                              Watch Commander's Use of Force Review and Incident Analysis

### *Watch Commander's*
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 hrs      Station: East Los Angeles

URN #: 919-15171-0285-399

- The deputy's distance from the suspect;
- The availability of additional law enforcement personnel;
- Amount of incapacitation to deputy or suspect due to fatigue or injury;
- The influence of drugs and/or alcohol on the suspect;
- The mental capacity or mental health of the suspect;
- The time available to a deputy to make a decision;
- Environmental factors such as weather, lighting, footing, availability of cover, or location (ex. confined space);
- The availability of other resources;
- Other exigent circumstances.

Based on a review of all information provided, was the application of force objectively reasonable?

[✓] Yes

[ ] No (If no, explain)

**Conclusions:**

Deputies observed the suspect receive a marijuana cigarette from an individual they detained for smoking marijuana in public. The suspect concealed the marijuana cigarette in her front sweatshirt pocket and started to walk away from the deputies. The deputies gave the suspect several verbal commands to stop and surrender the marijuana cigarette to them. The suspect ignored the commands given by the deputies. The deputies used a minimal amount of force on the suspect, and applied a firm grip on the suspect's wrists, in order to gain her compliance and possibly prevent her from discarding or destroying the marijuana cigarette. The deputies recovered the marijuana cigarette from the suspect's person and she was placed in the back seat of the patrol vehicle, without further incident. The deputies' actions were necessary to overcome the suspect's passive resistive behavior, recover the concealed evidence, and effect the arrest.

**Recommendations or Corrective Action taken:**

The use of force by deputies in this incident was within the guidelines of Department policy. I recommend no further action in this matter.

Watch Commander: Lieutenant Hugo Reynaga            Employee #: 443556

Signature:                                           Date: 12/04/2019

Defendants' Summary Judgment Exhibit No. 7

Page 26

## *Unit Commander's*
### Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 Hrs    Station: East Los Angeles

URN #: 919-15171-0285-399

*During my review of this incident, I examined the following:*

1. Does the Supervisor's Report on Use of Force Report package meet expected standards for overall quality (e.g., complete, clear, concise, timeliness, discrepancies addressed, etc.)?
   - ☑ Yes
   - ☐ No (If no, explain)

2. Were all reasonable investigative procedures conducted in order to rely on the investigation to draw appropriate conclusions, analysis, and findings?
   - ☑ Yes
   - ☐ No (If no, explain)

3. Does the Supervisor's investigation meet expectations, including a description of the evidence that either justifies or fails to justify the employee conduct based on the supervisor's independent review of the facts and circumstances of the incident?
   - ☑ Yes
   - ☐ No (If no, explain)

4. Was all applicable documentation completed and received within the time limits established by policy?
   - ☑ Yes
   - ☐ No (If no, explain)

5. Were requests for additional information and/or clarification completed within the time limits established by policy?
   - ☑ Yes
   - ☐ No (If no, explain)

6. Were submitted reports consistent regarding the need for force and the description of force used?
   - ☑ Yes
   - ☐ No (If no, explain)

7. Was all evidence documented?
   - ☑ Yes
   - ☐ N/A
   - ☐ No (If no, explain)

(SH-R-438PU) 09/2018                    Page 1 of 3                    Unit Commander's Use of Force Review and Incident Analysis

### *Unit Commander's*
## Use of Force Review and Incident Analysis
**Incident Date/Time: 10-30-19 / 2245 Hrs     Station:  East Los Angeles**

**URN #:  919-15171-0285-399**

8.  If the force resulted in mandatory notifications (i.e., IAB, etc.) were they made within the time limits established by policy?
☐ Yes
☐ No (If no, explain)
☑ N/A

9.  Assess Department member's actions throughout the force incident:

a. Were Department member's actions *prior* to the use of force in compliance with policy, procedures and training?
☑ Yes
☐ No (If no, explain)

b. Were Department member's actions *during* the use of force in compliance with policy, procedures and training?
☑ Yes
☐ No (If no, explain)

c. Were Department member's actions *following* the use of force in compliance with policy, procedures and training?
☑ Yes
☐ No (If no, explain)

10.  Did conduct by Department members warrant an administrative investigation or further inquiry?
☑ No
☐ Yes (If yes, explain)

11.  Were any problematic trends identified?
☑ No
☐ Yes (If yes, explain trend and steps taken to prevent in the future.)

12.  Does it appear that any follow-up action is necessary to correct policy, procedure or training violations?
☑ No
☐ Yes [If yes, describe the actions taken by you to correct (i.e., CAP, Unit Order, etc.) the apparent policy, procedural or training violations in the Recommendations or corrective actions taken section below.]

Defendants' Summary Judgment Exhibit No. 7
Page 28

### ***Unit Commander's***
## Use of Force Review and Incident Analysis
Incident Date/Time: 10-30-19 / 2245 Hrs    Station: East Los Angeles
URN #: 919-15171-0285-399

13. Is there a significant risk management issue identified with this case?

☐ No

☑ Yes (If yes, explain and was Risk Management Bureau notified?)

A Watch Commander Service Comment Report (252714) was generated pertaining to this incident. The suspect in this case is related (sister) to a deceased suspect as a result of a Deputy Involved Shooting. These incidents have attracted social media attention. Department executives were notified.

**DETERMINATION BY UNIT COMMANDER**

**Based on the information received, I concur with the Watch Commander's Review.**

☑ Yes

☐ No (If no, explain)

**Conclusions:**

I recommend no further action.

**Adjudication and Corrective Action taken:**

☐ Training: Tactics and Survival (TAS - Laser I )          ☐ Training: Arrest and Control (ARCON)

☐ Training (Other):                                        Date Attending Training:

☐ IAB / ICIB Investigation   IAB #:                        ☐ Informal Corrective Action (PLE)

☐ Other Action:

Unit Commander:  Rick Mejia                                Employee #:  283129

Signature:                                                 Date:  1-2/18/19

Defendants' Summary Judgment Exhibit No. 7
Page 29

*Area Commander's*
**Use of Force Review and Incident Analysis**
Incident Date/Time: 10/30/19-2245 hours   Station: East LA
URN #: 919-15171-0285-399

***PRE-INCIDENT TACTICS OR BEHAVIORS:*** *Consider the factors that impacted or gave rise to the need to use force.*

1. Did the employee(s) actions give rise to or contribute to the need to use force?
   ☐ Yes (If yes, explain)
   ☑ No

2. Is there anything the employee(s) could have or should have done that may have de-escalated or mitigated the need to use force?
   ☐ Yes (If yes, explain)
   ☑ No

3. Was each employee's evaluation of the threat level, and the tactics they employed, consistent with his/her experience level and level of training?
   ☑ Yes
   ☐ No (If no, explain)

***ACTUAL APPLICATION OF FORCE:***

4. Was the amount or type of force used necessary, reasonable and consistent with the perceived threat?
   ☑ Yes
   ☐ No (If no, explain)

5. Did the use of force stop when the suspect was controlled and the threat was neutralized?
   ☑ Yes
   ☐ No (If no, explain)

6. Were any and all resulting injuries consistent with the reported force?
   ☑ Yes
   ☐ No (If no, explain)

***REVIEW OF THE FORCE INVESTIGATION, REVIEW, AND ADJUDICATION***

7. Was the use of force documentation thorough and complete?
   ☑ Yes
   ☐ No (If no, explain)

8. Are there any policy or procedure issues that need to be addressed?

Defendants' Summary Judgment Exhibit No. 7
Page 30

### *Area Commander's*
## Use of Force Review and Incident Analysis
Incident Date/Time: 10/30/19-2245 hours   Station:  East LA

### URN #: 919-15171-0285-399

☐ Yes (If yes, explain)
☑ No

9.  Are there any equipment or training issues that need to be addressed?
☐ Yes (If yes, explain)
☑ No

10. Have any identified follow-up actions been completed?
☐ Yes (explain)
☑ No (explain)
No follow-up issues were identified.

11. Are there any unresolved questions or outstanding issues?
☐ Yes (If yes, explain)
☑ No

### FINAL DETERMINATION BY AREA COMMANDER

☑ A thorough and complete investigation was conducted for this incident.

☐ Appropriate **Corrective Action** was implemented for this incident (if applicable).

☐ An **Administrative Investigation** was ordered and completed for this incident.
Reference IAB #

Area Commander concurs with Unit Commander's analysis and adjudication?
☑ Yes
☐ No
The force used was objectively reasonable, and followed the guidelines of Department Policy.  I recommend no further action.

Area Commander: Ernest E. Chavez                     Employee #:  244722

Signature:                                                                    Date: 10/30/19

(SH-R-436PC) 12/2017                          Page 2 of 2                    Commander's Use of Force Review and Incident Analysis

Defendants' Summary Judgment Exhibit No. 7
Page 31